IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION



**FILED**

**DECEMBER 23, 2010**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

RAY A. FOX, by and through his         )
Guardian, ROSE FOX,                    )
                                       )
            Plaintiff,                 )
                                       )
       v.                              )    No. 09 C 5453
                                       )
DR. CONSTANTINE PETERS, TERRY          )
MCCANN, FORMER WARDEN OF               )
STATEVILLE CORRECTIONAL CENTER,        )
WEXFORD HEALTH SOURCES, INC.,          )
IVETTA SANGSTER, LPN, DAVID BARNES,    )
CMT, SEAN ROYCROFT, RN, ROYCE          )
BROWN-REED, RN, OFFICER ROSALINE       )
CURTIS, OFFICER MICHAEL BREWER,        )
OFFICER J. PASQUA, OFFICER MARLON      )    Judge James F. Holderman
BROWN, OFFICER J. ENCARNACION,         )
MICHAEL R. BORKOWSKI, CMT, JOSEPH      )
P. SHEEHY, CMT, KAREN FRYER, CMT,      )
JAMES F. BECKER, RN, and UNKNOWN       )
CORRECTIONAL OFFICERS and UNKNOWN      )
MEDICAL PERSONNEL,                     )
                                       )
            Defendants.                )    JURY TRIAL DEMANDED

## THIRD AMENDED COMPLAINT

NOW COMES Plaintiff, RAY A. FOX, by and through his

Guardian, ROSE FOX, and his attorneys, LOEVY & LOEVY, and

complaining of Defendants, DR. CONSTANTINE PETERS, TERRY MCCANN,

FORMER WARDEN OF STATEVILLE CORRECTIONAL CENTER, WEXFORD HEALTH

SOURCES, INC., IVETTA SANGSTER, LPN, DAVID BARNES, CMT, SEAN

ROYCROFT, RN, ROYCE BROWN-REED, RN, OFFICER ROSALINE CURTIS,

OFFICER MICHAEL BREWER, OFFICER J. PASQUA, OFFICER J.

ENCARNACION, MICHAEL R. BORKOWSKI, CMT, JOSEPH P. SHEEHY, CMT, KAREN FRYER, CMT, JAMES F. BECKER, RN, and UNKNOWN CORRECTIONAL OFFICERS and UNKNOWN MEDICAL PERSONNEL, sued in their individual capacities (collectively, "Defendants"), states as follows:

## Introduction

1.    This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

## Jurisdiction and Venue

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.    Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

## The Parties

4.    Plaintiff Ray Fox is a forty-eight year-old man from Chicago, Illinois. He was incarcerated at Stateville Correctional Center's Northern Reception and Classification Center ("Stateville NRC" or "NRC") at the time of the events at issue in this case.

5.    Stateville NRC is one of the major adult male intake

and processing units for the Illinois Department of Corrections ("IDOC"). The NRC is a temporary housing facility, where inmates are held until it is determined at which IDOC facility they will be permanently housed. This process often lasts weeks or months.

6. On or about October 7, 2007, and at all times relevant to the events at issue in this case, Defendants Curtis (now known as Rosaline Rashad), Brewer, Pasqua, Brown, Encarnacion and Unknown Correctional Officers were employed by the IDOC and worked at Stateville NRC. As such, these Defendants were acting under color of law. Defendants Curtis, Brewer, Pasqua, Brown, Encarnacion, and Unknown Correctional Officers were responsible for, among other things, communicating Plaintiff's requests for medication and/or medical attention to medical care providers, who are responsible for the medical care of inmates at Stateville NRC, and otherwise alerting medical care providers to Plaintiff's medical needs while Plaintiff was detained at Stateville NRC by the IDOC.

7. On or about October 7, 2007, and at all times relevant to the events at issue in this case, Defendant McCann was employed by the IDOC in the capacity of Warden of Stateville. As such, Defendant McCann was acting under color of law. At all times relevant to the events at issue in this case,

3

Defendant McCann promulgated rules, regulations, policies, and procedures as Warden of Stateville for the provision of certain medical care, including medical screening of and administration of medication to inmates at Stateville and Stateville NRC, by medical care providers such as medical technicians, employed by the IDOC at Stateville and Stateville NRC. Defendant McCann's policies were implemented by and through IDOC employees including the individual Defendant medical care providers, who were responsible for the medical care of inmates at Stateville NRC, including Plaintiff.

8. At all times relevant to the events at issue in this case, Defendant McCann promulgated rules, regulations, policies, and procedures as Warden for the training, supervision, and discipline of correctional officers with respect to: (1) communicating or failing to communicate inmate requests for medication, medical attention, and/or medical treatment to medical care providers, who are responsible for the medical care of inmates at Stateville NRC; and (2) alerting or failing to alert medical care providers to inmates' medical needs. Defendant McCann's policies were implemented by and through IDOC employees including the individual Defendant correctional officers and correctional medical technicians ("CMTs"), who were

4

responsible for ensuring that the medical needs of inmates at
Stateville NRC, including Plaintiff, were made known to the
responsible medical care providers employed by Wexford Health
Sources, Inc. or the IDOC.

9.   On or about October 7, 2007, and at all times relevant
to the events at issue in this case, Defendant Wexford Health
Sources, Inc. ("Wexford") was a Florida corporation under
contract to the State of Illinois to furnish medical care to
inmates incarcerated in the IDOC, and specifically, at
Stateville and Stateville NRC. In its capacity as a contractor
to the IDOC, Wexford promulgated rules, regulations, policies,
and procedures for the medical screening, medical treatment, and
overall medical care of inmates at Stateville NRC, including
Plaintiff. Wexford policies were implemented by and through its
employees including the individual Defendant medical care
providers, who were responsible for the medical care of inmates
in the IDOC. In its capacity as a contractor to the State of
Illinois, through the Illinois Department of Corrections,
Wexford was, at all times relevant hereto, acting under color of
law.

10.   On or about October 7, 2007, and at all times relevant
to the events at issue in this case, Defendants Peters,

Sangster, Roycroft, Becker, and Unknown Medical Personnel were
nurses or doctors employed by Wexford to provide medical
services to inmates, including Plaintiff, at Stateville NRC.
Defendants Peters, Sangster, Roycroft, Becker, and Unknown
Medical Personnel were responsible for the provision of
medication to, medical care, treatment, and welfare of Plaintiff
while he was detained at Stateville NRC by the IDOC. As such,
Defendants Peters, Sangster, Roycroft, Becker, and Unknown
Medical Personnel were acting under color of law.

11.   On or about October 7, 2007, and at all times relevant
to the events at issue in this case, Defendant Peters was
employed by Wexford as the Medical Director of Stateville NRC.
As such, Defendant Peters was the final policymaker for Wexford
and had final authority to and did promulgate rules,
regulations, policies, and procedures as Medical Director of
Stateville NRC for the provision of certain medical care,
including medical screening and care of and administration of
medication to inmates at Stateville NRC, by medical care
providers such as nurses, doctors, and CMTs, employed at
Stateville NRC. Defendant Peters' policies were implemented by
and through Wexford and IDOC employees including the individual
Defendant medical care providers, who were responsible for the

6

medical care of inmates at Stateville NRC, including Plaintiff.

12. On or about October 7, 2007, and at all times relevant
to the events at issue in this case, Defendants Barnes, Brown-
Reed, Borkowski, Sheehy, Fryer, and Unknown Medical Personnel
were employees of IDOC and worked at Stateville NRC. Defendants
Barnes, Brown-Reed, Borkowski, Sheehy, Fryer and Unknown Medical
Personnel were Correctional Medical Technicians ("CMTs") or
nurses who were responsible for the provision of medication to,
medical care, treatment, and welfare of Plaintiff while he was
detained at Stateville NRC by the IDOC. As such, Defendants
Barnes, Brown-Reed, Borkowski, Sheehy, Fryer, and Unknown
Medical Personnel were acting under color of law.

## Factual Allegations

13. At all times relevant to the events at issue in this
case, Plaintiff Ray Fox suffered from epilepsy or a seizure
disorder and required seizure medication to control his
seizures. On or about September 24, 2007, Plaintiff had been
prescribed seizure medication by Defendant Dr. Peters at
Stateville NRC during his initial intake screening. This
prescription indicated that Plaintiff was required to take 200
mg of phenytoin and 30 mg of phenobarbital by mouth daily for
thirty (30) days beginning on September 24, 2007. Phenytoin and

7

phenobarbital are anti-seizure medications.

14.   Upon information and belief, Plaintiff did not receive any or all of the essential anti-seizure medication that he had been prescribed by Defendant Peters.

15.   As a result, on or about Sunday, October 7, 2007, Plaintiff was found unconscious on the floor of his cell, R210, in Unit R of the NRC, and was bleeding from his head and/or mouth. Plaintiff had suffered a seizure, head trauma, intracranial hemorrhaging, and he had aspirational pneumonia.

16.   During the three to four days prior to October 7, 2007, Plaintiff had repeatedly asked all correctional officers, nurses, and CMTs who passed through his Unit--including Defendants Sangster, Barnes, Roycroft, Becker, Brown-Reed, Curtis, Brewer, Pasqua, Brown, Encarnacion, Borkowski, Sheehy, and Fryer--for his medications or assistance in obtaining his medications. Plaintiff asked for his medications from correctional officers, nurses, and CMTs during every shift, two to three times a shift.

17.   Plaintiff also asked Defendants Sangster, Barnes, Roycroft, Becker, Brown-Reed, Curtis, Brewer, Pasqua, Brown, Encarnacion, Borkowski, Sheehy, and Fryer to see a doctor. Plaintiff told these Defendants that he was vomiting, had

8

headaches, diarrhea, trembling, and the shakes.

18.   During the several days prior to October 7, 2007, Plaintiff clearly appeared to be very ill. For instance, while the other inmates in his Unit left their cells to go to recreation and use the showers, Plaintiff stayed in his cell curled up in a fetal position on his mattress, shaking and sweating. Plaintiff had vomited on his blanket and mattress, and he had not eaten any of his food, leaving unopened cereal, milk, and juice boxes piled up in his cell.

19. Defendants Sangster, Barnes, Roycroft, Becker, Brown-Reed, Curtis, Brewer, Pasqua, Brown, Encarnacion, Borkowski, Sheehy, and Fryer had the opportunity to see that Plaintiff appeared to be very ill and to hear Plaintiff's requests for medication and medical attention because they were on duty in Plaintiff's Unit during the several days prior to October 7, 2007. Defendant Correctional Officers Curtis, Brewer, Pasqua, Brown, and Encarnacion could hear and see Plaintiff when they did their rounds in the Unit, and Defendant Medical Personnel Sangster, Barnes, Roycroft, Becker, Brown-Reed, Encarnacion, Borkowski, Sheehy, and Fryer could hear and see Plaintiff when they passed by Plaintiff's cell to distribute medication to other inmates in the Unit.

20.   Defendant Correctional Officers Curtis, Brewer, Pasqua, Brown, and Encarnacion saw that Plaintiff was very ill and were aware of Plaintiff's requests for medication and medical attention. Yet, they did nothing to alert the appropriate medical personnel or the Health Care Unit of Plaintiff's condition. They ignored Plaintiff's objectively serious medical need of which they were aware.

21. Pleading additionally and in the alternative, Defendant Medical Personnel Sangster, Barnes, Roycroft, Becker, Brown-Reed, Borkowski, Sheehy, and Fryer saw that Plaintiff was very ill and were aware of Plaintiff's requests for medication and medical attention. Yet, they did nothing to alert the Health Care Unit or any doctor of Plaintiff's condition or provide Plaintiff with medical attention or medication. They ignored Plaintiff's objectively serious medical need of which they were aware.

22.   Although Defendants Sangster, Barnes, Roycroft, Becker, Brown-Reed, Curtis, Brewer, Pasqua, Brown, Encarnacion, Borkowski, Sheehy, and Fryer were on notice that Plaintiff suffered from an objectively serious medical condition and was very ill, they did nothing in response to his requests for medication and medical attention. Instead of giving Plaintiff

10

his medication, providing medical attention, or alerting the appropriate medical personnel who could provide Plaintiff with medication or medical attention, Defendants ignored his requests.

23.  One or more of the Defendants responded to Plaintiff's requests for medication by stating that he had to see a doctor in order to get his medication, but they did nothing to ensure that Plaintiff saw a doctor. None of the Defendants took Plaintiff to see a doctor, brought a doctor to see him, took him to the Health Care Unit, called the Health Care Unit, or placed Plaintiff on any sick call list.

24.  One or more of the Defendants responded to Plaintiff's requests for medication and/or medical care by stating something to the effect that, "you'll see a doctor when you get to where you're housed at," meaning the permanent IDOC facility to which Plaintiff would eventually be transferred after his stay at Stateville NRC.

25.  Despite his requests, Plaintiff was not taken to the Health Care Unit and did not see a doctor before he was found unconscious on October 7, 2007. Nor did Plaintiff receive his medications.

26.  During the 3:00-11:00 pm shift on the evening of

11

October 6, 2007, Plaintiff's condition had deteriorated to the point that his cellmate called out for medical help from the correctional officer on duty in the unit.

27.   The on-duty correctional officer came to Plaintiff's cell, looked at him, said that he was sick, yelled "What's wrong with you?" at him, and called on his radio to report a medical emergency. Defendant Barnes, CMT, arrived to examine Plaintiff.

28.   Defendant Barnes observed that Plaintiff had vomited all over his blanket and mattress and urinated on himself. Plaintiff told Defendant Barnes that he had the chills, a sore throat, and a headache. Plaintiff also told Defendant Barnes, "I take Dilantin [phenytoin]." Upon information and belief, Plaintiff told Defendant Barnes that he had not received his medication.

29.   Defendant Barnes did not take Plaintiff to the Health Care Unit, did not provide Plaintiff with his medication, and did not take him to see a doctor or bring a doctor to see him. Instead, Defendant Barnes left Plaintiff in his cell.

30.   The next morning, sometime between 7:00 and 9:00 am, before Plaintiff had a seizure and suffered head trauma, he continued to ask correctional officers, nurses, and CMTs who passed through his Unit for his medications and medical

12

attention.

31. One of the correctional officers Plaintiff alerted was Defendant Curtis, the officer on duty that morning in Plaintiff's Unit. Instead of calling the Health Care Unit or alerting the appropriate medical personnel to Plaintiff's serious medical need, Defendant Curtis got into a verbal dispute with him, ignored his request for help, and told him something to the effect of, "I'll get to you when I get to you," and "If you're nice to me, maybe I'll do something to help you."

32. Defendants knew or should have known that Plaintiff needed medication or medical attention to treat his objectively serious medical condition.

33. Defendants, including Defendants Peters, Sangster, Barnes, Roycroft, Becker, Brown-Reed, Borkowski, Sheehy, Fryer, and Unknown Medical Personnel did not give Plaintiff his seizure medication or provide medical attention even though they knew that a substantial risk of serious harm existed if he did not receive the necessary medication or medical attention to treat his objectively serious medical need.

34. Additionally, Defendants, including Defendants Curtis, Brewer, Pasqua, Brown, Encarnacion, and Unknown Correctional Officers failed to alert any medical care provider (including

13

any medical technician, nurse, or doctor) of Plaintiff's need

for medication and/or medical attention, even though they knew

that a substantial risk of serious harm existed if he did not

receive the necessary medication and/or medical attention to

treat his objectively serious medical need.

### Damages

35.  As a result of Defendants' misconduct, Plaintiff

underwent emergency brain surgery at Provena St. Joseph Hospital

in Joliet, Illinois. Plaintiff remained in a coma for several

weeks thereafter.

36.  Also as a result of Defendants' misconduct, Plaintiff

has suffered severe physical disability and physical and

emotional injuries. Plaintiff has suffered extensive and

permanent brain damage that has, among other things, left him

partially blind, unable to walk, disoriented to his

surroundings, and requiring constant supervision. As a result of

Defendants' misconduct, Plaintiff is mentally disabled and

totally without understanding or capacity to make or communicate

decisions about his person, estate, or financial affairs.

Plaintiff has been under this disability continuously since

October 7, 2007. As a result, Rose Fox, Plaintiff's mother, has

been appointed plenary guardian of his person and estate.

14

**Legal Claims**

37.  In the manner described more fully herein, Defendants Peters, Sangster, Barnes, Roycroft, Becker, Brown-Reed, Borkowski, Sheehy, Fryer, Curtis, Brewer, McCann, Wexford, Pasqua, Brown, Encarnacion, and Unknown Medical Personnel and Unknown Correctional Officers caused Plaintiff's damages by violating his constitutional rights and/or failing to intervene to prevent the same. Among others, Defendants violated Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments.

38.  As described more fully herein, while Plaintiff was incarcerated at Stateville NRC, Defendants Peters, Sangster, Barnes, Roycroft, Becker, Brown-Reed, Borkowski, Sheehy, Fryer, Curtis, Brewer, McCann, Wexford, Pasqua, Brown, Encarnacion, Unknown Medical Personnel and Unknown Correctional Officers failed to provide him with adequate medical attention. In this manner, the conduct of Defendants was objectively unreasonable and deliberately indifferent to Plaintiff's objectively serious medical need.

39.  As described more fully herein, Defendants Peters, Sangster, Barnes, Roycroft, Becker, Brown-Reed, Borkowski, Sheehy, Fryer, Curtis, Brewer, McCann, Wexford, Pasqua, Brown,

15

Encarnacion, Unknown Medical Personnel and Unknown Correctional
Officers engaged in extreme and outrageous conduct with respect
to Plaintiff, to wit, they refused to provide him with adequate
medical attention despite his objectively serious need. This
misconduct was rooted in an abuse of power or authority, and it
was undertaken with intent or knowledge that there was a high
probability that the conduct would inflict severe emotional
distress and with reckless disregard of that probability.

40.  At all times relevant to the events at issue in this
case, Wexford was under contract to the State of Illinois,
through the Illinois Department of Corrections, to provide
health care to inmates in Illinois prisons such as Stateville
and Stateville NRC, including Plaintiff. In such capacity,
Wexford acted under color of law, and Wexford, as sole provider
of healthcare services to inmates in the IDOC, was exclusively
responsible for the creation, implementation, oversight, and
supervision of all policies and procedures followed by Wexford
employees who were medical care providers to inmates in the
IDOC, including Plaintiff.

41.  In October 2007 and for a period of time prior
thereto, Wexford maintained a policy or procedure under which
inmates with serious medical conditions, such as Plaintiff, were

16

routinely denied access to proper or sufficient medication and medical care. It is common to observe inmates in Stateville and Stateville NRC with clear symptoms of serious medical illness or injury or conditions who frequently ask for medical care and to see a doctor, whose requests are routinely delayed or completely ignored.

42.   Wexford's policies and procedures were manifest in the frequent failure and refusal of its employees to provide proper or adequate medication and medical care to inmates whom they knew to have serious medical conditions, and to ignore requests by inmates for medical care and medication for which they had a serious medical need of which the employee knew.

43.   Wexford's policies and procedures resulted in the frequent failure to provide inmates such as Plaintiff with essential prescription medications, despite the fact that prescription orders had been written for such medications.

44.   In October 2007 and for a period of time prior thereto, Wexford knowingly maintained a policy or procedure at IDOC facilities in which it was responsible for providing medical care to inmates, in which its employees commonly failed or refused to: (1) properly examine an inmate with a serious medical condition; (2) provide prescription medication to an

17

inmate with a serious medical condition; and in which its employees routinely ignored and refused to respond to inmates who: (3) requested medical care or medication or asked to see a doctor; or (4) exhibited obvious signs of a serious medical condition or illness.

45. Wexford, acting in its capacity as a contractor to the State of Illinois, through the IDOC, and as the provider responsible for the medical screening, medical treatment, and overall medical care of inmates at Stateville and Stateville NRC, including Plaintiff, was at all times relevant hereto acting under color of law.

46. Wexford had a constitutional obligation to maintain and provide continuing adequate and appropriate medical evaluation and medical care and treatment of prisoners incarcerated at Stateville and Stateville NRC.

47. As a direct and proximate result of the unconstitutional policies and procedures of Wexford, as set forth herein, Plaintiff was deprived of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

48. At all times relevant to the events at issue in this case, it was the duty of Wexford through its agents and

18

employees acting within the scope of their employment, including the individual Defendants named herein, to refrain from engaging in willful and wanton misconduct by failing or refusing to provide adequate and appropriate medical care to inmates with serious medical conditions.

49.  In October 2007 and for a period of time prior thereto, Defendant McCann, as Warden of Stateville, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees at Stateville and Stateville NRC, including medical technicians and correctional officers.

50.  In October 2007 and for a period of time prior thereto, Defendant McCann had notice of a widespread practice by IDOC employees at Stateville and Stateville NRC under which inmates with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care. It is common to observe inmates in Stateville and Stateville NRC with clear symptoms of serious medical illness or injury or conditions who frequently ask for medical care and to see a doctor, whose requests are routinely delayed or completely ignored. Specifically, there existed a widespread practice at Stateville and Stateville NRC under which IDOC employees,

19

including medical technicians and correctional officers,
commonly failed or refused to: (1) properly examine an inmate
with a serious medical condition; (2) provide prescription
medication to an inmate with a serious medical condition; and
routinely ignored and refused to respond to inmates who: (3)
requested medical care or medication or asked to see a doctor;
or (4) exhibited obvious signs of a serious medical condition or
illness.

51.  The above-described widespread practice, so well-
settled as to constitute a de facto policy of Defendant McCann
as Warden, was able to exist and thrive because Defendant
McCann, who had authority over the same, exhibited deliberate
indifference to the problem. Specifically, Defendant McCann had
notice of this widespread practice of failure to attend to
inmates' serious medical needs through lawsuits filed against
him and other IDOC employees, as well as grievances and other
complaints filed by inmates and submitted to him. Defendant
McCann manifested deliberate indifference to these
constitutional violations by failing to take reasonable measures
to remedy these violations. Among other things, Defendant McCann
failed to adequately train, supervise, control, and discipline
IDOC employees who: (1) failed to provide proper or adequate

20

medication or medical care to inmates whom they knew to have serious medical conditions; (2) ignored requests by inmates for medical care whom they observed to exhibit signs and symptoms of serious medical conditions for which they were aware serious medical care was required; and (3) otherwise failed to alert medical care providers to the medical needs of inmates whom they knew to have serious medical conditions.

52.  Plaintiff's injuries were proximately caused by the policies and widespread practices of Defendant McCann as described above. These widespread practices were allowed to flourish because Defendant McCann directly encouraged and was thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, control, and discipline IDOC employees, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff. In this way, Defendant McCann directed, knew about, facilitated, approved, condoned, and consented to the conduct that caused the violation of Plaintiff's constitutional rights, and violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

21

53.  As a direct and proximate result of the unconstitutional policies and widespread practices maintained by Defendant McCann, as set forth herein, Plaintiff was deprived of his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

54.  Defendant McCann had a constitutional obligation to provide continuing adequate and appropriate supervision, training, and discipline for IDOC employees with respect to medical evaluation, screening, care and treatment of, and provision of medication to inmates incarcerated at Stateville and Stateville NRC.

55.  At all times relevant to the events at issue in this case, it was the duty of Defendant McCann through his maintenance of policies, procedures, rules, and regulations for the conduct and discipline of IDOC employees at Stateville and Stateville NRC, including the individual Defendants named herein, to refrain from engaging in willful and wanton misconduct by failing or refusing to remedy the widespread practices of failure to provide necessary medical care to inmates with serious medical conditions.

56.  The misconduct described herein was objectively unreasonable, and undertaken with malice, willfulness, and

deliberate or reckless indifference to the rights of others such that the Defendants' actions shock the conscience.

57.   As a proximate result of the Defendants' misconduct described in this Complaint, Plaintiff suffered damages, including but not limited to permanent physical disability and mental distress and anguish.

58.   All of Defendants' interactions with Plaintiff were undertaken under color of law, and within the scope of their employment.

59.   In committing the acts alleged in the preceding paragraphs, each of the Defendants Peters, Sangster, Roycroft, Becker, and Unknown Medical Personnel were agents of Wexford, acting at all relevant times within the scope of their employment.

60.   The acts and omissions of Wexford, through its medical care providers, as set forth herein, and actions engaged in by Defendants predicated on the policies and procedures described herein, individually and collectively, caused the Plaintiff to endure great pain and suffering which caused the Plaintiff severe emotional distress.

61.   Because Defendants McCann, Curtis, Brewer, Brown-Reed, Brown, Pasqua, Encarnacion, Borkowski, Sheehy, Fryer, and

Unknown Medical Personnel and Unknown Correctional Officers acted within the scope of their employment, the State of Illinois is therefore liable as their employer for any resulting damages and award of attorneys' fees.

WHEREFORE, Plaintiff, RAY A. FOX, by and through his Guardian, ROSE FOX, respectfully requests that this Court enter judgment in his favor and against Defendants DR. CONSTANTINE PETERS, TERRY MCCANN, FORMER WARDEN OF STATEVILLE CORRECTIONAL CENTER, WEXFORD HEALTH SOURCES, INC., IVETTA SANGSTER, LPN, DAVID BARNES, CMT, SEAN ROYCROFT, RN, ROYCE BROWN-REED, RN, OFFICER ROSALINE CURTIS, OFFICER MICHAEL BREWER, OFFICER J. PASQUA, OFFICER MARLON BROWN, OFFICER J. ENCARNACION, MICHAEL R. BORKOWSKI, CMT, JOSEPH P. SHEEHY, CMT, KAREN FRYER, CMT, JAMES F. BECKER, RN, and UNKNOWN CORRECTIONAL OFFICERS and UNKNOWN MEDICAL PERSONNEL, awarding compensatory damages, punitive damages, and attorneys' fees.

### JURY DEMAND

Plaintiff, RAY A. FOX, by and through his Guardian, ROSE FOX, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

24

RESPECTFULLY SUBMITTED,


  /s/ Elizabeth Wang
One of Plaintiff's Attorneys

Arthur Loevy
Michael Kanovitz
Jon Loevy
Elizabeth Wang
LOEVY & LOEVY
312 North May St., Ste. 100
Chicago, IL 60607
(312) 243-5900