Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 5453 | **DATE** | 1/19/2012 |
| **CASE TITLE** | Ray A. Fox, by and through his guardian, Rose Fox vs. Dr. P. Ghosh et al. | | |

**DOCKET ENTRY TEXT**

For the reasons listed in the Statement section of the order, the court determines that Dr. Constantine Peters, the on-site medical director of the Stateville Northern Reception and Classification Center ("NRC") during the times relevant to this case, was the final policymaking official of Wexford Health Sources, Inc. ("Wexford") with respect to the clinical care of inmates at the NRC and specifically the procedures for distributing medication to inmates at the NRC.

■[ For further details see text below.]          Docketing to mail notices.

# STATEMENT

     Defendant Wexford Health Sources, Inc. ("Wexford") is a private corporation that contracted to provide medical services for inmates at the Stateville Northern Reception and Classification Center ("NRC"), and that allegedly violated the constitutional rights of Plaintiff Ray Fox by failing to provide him adequate medical attention and medication to treat Fox's seizure disorder.

     A private corporation acting under the color of state law is subject to the same rules as a municipality under 42 U.S.C. § 1983. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 n.1 (7th Cir. 2004). Thus, a private corporation that has contracted to provide medical services in state prisons may be liable for violating an inmate's constitutional rights under § 1983 if it "'maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners.'" *Id.* at 927 (quoting *Estate of Novack ex rel. v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)). "This liability is not founded on a theory of vicarious liability or *respondeat superior* that holds a [corporation] responsible for the misdeeds of its employees. Rather, a [corporate] policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation." *Id.* (citation and quotation marks omitted).

     Specifically, the factfinder may determine that a private corporation providing prison medical services is liable if the unconstitutional act complained of is caused by official policy of the corporation, a practice or custom of the corporation, or an act by a corporate official with final policymaking authority. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). "To demonstrate that the [corporation] is liable for a harmful custom or practice, the plaintiff must show that [corporate] policymakers were "deliberately indifferent as to [the] known or obvious consequences." *Id.* (citation omitted). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.*

     To allow the factfinder to determine if the corporation is liable, the court must therefore first make the legal determination of who the corporate policymaker is with respect to the allegedly unconstitutional acts. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("[T]he identification of those officials whose

# STATEMENT

decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury."). To make that determination, the court must determine who in the corporation is "the apex of authority for the action in question," regardless of whether that person's authority may be characterized as legislative or executive. *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001) ("It doesn't matter what form the action of the responsible authority that injures the plaintiff takes. It might be an ordinance, a regulation, an executive policy, or an executive act (such as firing the plaintiff).").

In this case, the relevant actions in question are the clinical decisions about the medical care of Plaintiff Ray Fox, and, in particular, the decisions about the method for prescribing, monitoring, and distributing medication to Fox. The court must therefore determine the individual or entity at Wexford with the final responsibility for those decisions.

The Wexford Defendants suggest that its final policymaking authority is held by the corporate officials who approve Wexford's "Prison Operations: Policies and Procedures" manual. (Dkt. No. 330, Ex. C.) The Wexford Defendants are correct that the manual governs Wexford policy at the highest level. Nonetheless, "[a]uthority to make municipal policy may be granted directly by a legislative enactment *or may be delegated* by an official who possesses such authority." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (emphasis added). The court determines that corporate officials may likewise delegate policymaking authority.

Here, Wexford's manual expressly delegates authority to the on-site Medical Director to direct the relevant actions. (*See id.* at 19-32 ("Clinical decisions regarding health care for inmates will be the sole responsibility of qualified health care personnel for the facility. Qualified health care personnel will include, but not be limited to, the Medical Director for medical care . . . ."); *id.* at 19-21 ("The facility Medical Director will determine the prescriptive practices in the facility.").) Wexford's contract with the Illinois Department of Corrections ("IDOC"), which runs the NRC, confirms that delegation of authority by noting that the on-site Medical Director "shall serve as the medical authority" and "shall plan, implement, direct and control all clinical aspects of the health care program." (Dkt. No. 330, Ex. A, at 31-64.) Although the on-site Medical Director must comply with various state policies and law when exercising his authority, the contract makes clear that neither the IDOC warden nor other state officials have the authority to interfere with the on-site Medical Director's medical discretion in this area. Moreover, Plaintiff has also presented evidence that in practice, the on-site Medical Director exercised control over clinical decisions and decisions relating to the distribution of medicine. (Dkt. No. 330, Ex. B, at 123 (testimony of Wexford's corporate representative authorized to testify on corporate policy and procedure that "[w]hat [the Medical Director] signs off on is . . . what we are using and following.").) Consequently, the on-site Medical Director, who the parties have stipulated was Dr. Constantine Peters during the period in question, is Wexford's final policymaking authority with respect to the clinical care of and distribution of medication to inmates at the NRC.

Plaintiff also contends that Wexford's Quality Improvement Committee at the NRC (the "Committee") had final policymaking authority to implement policies and procedures at the NRC. According to the contract with the IDOC, that Committee "shall be responsible for the annual review and approval of all health care policies and procedures." (Dkt. No. 330, Ex. A, at 31-66.) Any changes the Committee made, however, were "subject to the approval of the IDOC Medical Director and On-site Medical Director." (*Id.*) Accordingly, the Committee did not have *final* policymaking authority, and it is not a policymaker for Wexford. *See Howell v. Evans*, 922 F.2d 712, 725, *vacated pursuant to settlement by* 931 F.2d 711 (11th Cir. 1991).

Finally, Plaintiff contends that Mary Purvin, the Director of Nursing at the NRC, was Wexford's final policymaker in the area of resolving medical grievances filed by inmates because her authority to decline to investigate medical grievances was not reviewed by others. (Dkt. No. 330, Ex. D, at 90-92.) Merely exercising discretion in an area is not the equivalent of making policy, however. *See Pembaur*, 475 U.S. at 481-83 ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can

| STATEMENT |
|---|
| be held liable." (citation and footnote omitted); *see also Gernetzke*, 274 F.3d at 468 ("An executive official who rather than making policy merely implements legislative policy acts merely as a delegate of the legislature, and his act is therefore not the act of the municipality itself for purposes of liability under section 1983."). The court determines that Purvin's authority to resolve complaints did not give her policymaking authority.<br><br>*James F. Holderman* |