UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAY A. FOX, | ) |
|       Plaintiff, | ) ) ) |
| v. | )    CASE NO.: 09-C-5453 |
| | ) ) |
| DR. P. GHOSH, ET AL., | ) ) |
|       Defendant. | ) |

**CONSENT JUDGMENT**

This matter comes before the Court upon the agreement of Wexford Health Sources, Inc. ("Wexford") and Ray A. Fox, by and through his Guardian, Rose Fox (collectively, "Fox"), for entry of judgment in this action. The court makes no factual findings, but Fox and Wexford stipulate to each of the following:

1. Fox initiated the instant lawsuit (the "Fox Claim") against Wexford and other defendants in September 2009.

2. Wexford is an insured under several Liability Insurance Policies issued by Admiral Insurance Company ("Admiral") from October 1, 2000 through October 1, 2008. The 2006-2007 Admiral policy is numbered E0000000615-10, with effective dates of October 1, 2006 to October 1, 2007. The 2007-08 Admiral policy is numbered E0000000615-11, with effective dates of October 1, 2007 to October 1, 2008. All of the foregoing Admiral policies are collectively referred to herein as the "Admiral Policies."

3. The Admiral Policies in the 2006-2007 and 2007-08 policy periods each provide $3 million in "Long-Term Healthcare Facilities Professional Liability" coverage (Coverage D in

the Admiral Policies) for each "medical incident," and an additional $3 million of coverage for each "occurrence" in "Personal and Advertising Injury Liability" coverage (Coverage B in the Admiral Policies).

4. In a November 23, 2009 letter to Wexford, Robert Johnston, an authorized representative of Admiral, agreed to defend Wexford under the "Long-Term Healthcare Facilities Professional Liability portion of Policy # E0000000615-11" but wrote that Admiral was reserving its right to seek a declaratory judgment regarding whether punitive damages sought against Wexford in the Fox Claim are covered by the Admiral policy. Admiral also stated that it would not be liable for any amount in excess of the policy limits and, "[t]herefore, should you choose, it is your right to engage your own attorney, at your own expense, to protect you against any uninsured interest. The attorney we have retained to defend you will coordinate the defense with your personal attorney."

5. Admiral retained Michael Charysh of Charysh & Schroeder Ltd. to defend Wexford, as well as defendants Dr. Peters and Nurse Becker, both of whom also were insureds under the Admiral Policies. Through Charysh and other attorneys retained by Admiral, Admiral controlled every aspect of Wexford's, Becker's, and Peters' defense and settlement negotiations from January 2012 through October 2012.

6. On January 11, 2012, Fox's counsel, Michael Kanovitz, sent a letter (the "January 11, 2012 Settlement Demand") to Charysh stating that two Admiral policy limits were applicable to Fox's claims against Wexford, Peters, and Becker, and conveying the following alternate settlement demands.

(a) Fox will settle with Wexford, Peters, and Becker for $5.99 million; or

    (b) Fox will settle with either Peters or Becker, in their individual capacities only, for $2.99 million; or

    (c) Fox will waive punitive damages against Peters and/or Becker if he/they will agree to have a negligence instruction submitted to the jury despite the fact that Fox may not have pleaded such a claim.

  7. On January 18, 2012, Wexford sent an email to Johnston stating that "[i]f the loss date year in this case was 2008 with two separate insured-employees, based on past experience with Admiral, then two policies would come into play. Accordingly, it appears then that Plaintiff's attorney may be correct that two policies exist for this case being tried next week????" On January 20, 2012, Johnston sent an email to Wexford stating that "[w]e disagree with the plaintiff's opinion that this represents two separate claims and two separate policy periods," and also informed Wexford that Admiral had rejected the January 11, 2012 Settlement Demand and had made a counter offer of $500,000 on January 16, 2012. The January 11, 2012 Settlement Demand was a demand to settle for less than the limits of the Admiral Policies and would have resulted in a complete settlement of the Fox Claim against Wexford, Peters, and Becker.

  8. Substantive settlement negotiations commenced again on July 10, 2012, when Kanovitz sent a letter (the "July 10, 2012 Settlement Demand") to Charysh, via email, in which he stated that "Plaintiff has made several attempts to negotiate with your clients, individually and collectively, to resolve their respective liabilities. Your clients' insurer has stood in the way of each attempt, justifying its intransigence with a misinterpretation of its policy limit and, as to Mr. Becker (whom we offer to dismiss for free, simply to keep the January 2012 trial date) a misapplication of its loyalties between separate insureds. This course of conduct has put all of your clients in serious jeopardy because the actual damages in this case could well exceed $20 million."

9. In the July 10, 2012 Settlement Demand, as clarified by an email sent by Kanovitz to Charysh later that day, Kanovitz conveyed a settlement demand in which he offered to release all claims against Wexford, Peters, and Becker, subject to the following terms:

    (a) Admiral will pay $3 million, allocated to Fox's "emotional and physical pain and suffering" through October 6, 2007, and the reasonable value of Fox's medical care and supplies received from October 6, 2007 through trial. Fox will not seek recovery for those damages at trial;

    (b) Defendants will remain parties at trial;

    (c) If Fox obtains a judgment against Wexford, Peters, or Becker, he will enforce the judgment only up to the amount of:

        (i) any additional insurance available to them; plus

        (ii) any other indemnity available to them; plus

        (iii) any amounts recovered from the broker who placed Wexford's 2006 and 2007 insurance policies; plus

        (iv) Wexford will pay $100,000 to Fox for each million dollars of the amount of the judgment that exceeds the amounts paid by Admiral and the other potential sources of recovery set forth in Kanovitz's letter.

    (d) Fox will not seek punitive damages from Wexford, Peters, or Becker at trial.

Kanovitz's transmittal email stated that the July 10, 2012 Settlement Demand would remain open until July 17, 2012.

10. On July 12, 2012, David Carlson, an attorney retained by Admiral to negotiate a settlement of the Fox Claim, rejected Kanovitz's July 10, 2012 settlement demand without soliciting Wexford's input or even advising Wexford that Admiral was going to reject the settlement demand. Had Wexford been advised properly by Admiral, Wexford would have made a reasonable business decision about contributing to a settlement with Fox.

11. On July 31, 2012, Carlson offered $3 million to Kanovitz in exchange for a full

release on behalf of Wexford, Peters, and Becker. On August 3, 2012, Kanovitz rejected Carlson's $3 million offer and made a counter-demand of $2 million in exchange for releasing Peters and Becker in their individual capacities only.

12. By email sent on August 8, 2012, Carlson again offered $3 million in exchange for a release of all claims against Wexford, Peters, and Becker. Kanovitz rejected Carlson's offer later in the day on August 8, 2012. Upon receiving Kanovitz's rejection of Carlson's $3 million offer, Johnston wrote to Wexford that "I had hoped that the attorney would offer something reasonable above the policy limits . . . something palatable for Wexford to consider contributing over and above what Admiral offered. Although we talked about a contribution we never knew what amount would be acceptable so I asked for a number. Unfortunately, we now know that plaintiff will not work with us on an acceptable level. If Wexford wants to make a reasonable excess of policy limits contribution we will increase our offer by that amount."

13. On August 14, 2012, Johnston sent an email to Wexford stating that Admiral had "previously made repeated efforts to settle the entire case on behalf of Dr. Peters, Nurse Becker and Wexford Health Sources for the $3 million limits of the Admiral policy. The plaintiff's attorney has consistently rejected our efforts to settle the case on behalf of all of our insureds." Admiral also wrote that it was going to offer $3 million to Fox to settle all claims against Peters and Becker, and that this decision was "guided by the advice of our defense counsel, who informs us that the likelihood of [Wexford] prevailing on liability is less than a 35% proposition. Moreover, it is anticipated that an adverse verdict would likely include compensatory damages substantially in excess of the $3 million limits of our policy. Further, a verdict may well include substantial punitive damages." In his email, Johnston asked Wexford whether it would contribute to the settlement offer so that Admiral could present the offer as a "global settlement

offer."

14. In response, Wexford sent an email to Johnston asking, "what would be a reasonable amount that you would suggest WHS kicking in above our $3M policy limits **that would possibly result in a settlement**? As I stated before, if the attorney flatly turned down the $3M to settle the entire case and get everyone out . . . then my thoughts are he is not going to agree to settle out all of us for a couple $100K more." (Emphasis in original). Wexford also wrote that "we do not believe Admiral agreeing to settle out Dr. Peters and Nurse Becker is in the best interest of ALL the insured[s], to whom Admiral has an obligation. As such, we will be retaining outside counsel to review our Admiral policy, to evaluate the one limit vs. two limit issue and to determine if Admiral is operating within the scope of the policy in the best interest."

15. Johnston responded to Wexford in an August 15, 2012 email, stating that he has "consistently asked that if Wexford was willing to make a reasonable excess of policy limits contribution, we would include that figure with the offer. Frankly, there is no correct answer as to what, if any, that contribution should be. Considering the potential excess verdict, however, I do not believe a 'couple of $100[thousand]s' will suffice. Any contribution is, and has been, Wexford's decision to make. However, if you are asking me for my recommendation as to what your contribution should be, I believe any contribution should be in the 7-figures." Johnston did not mention that the terms of the July 10, 2012 Settlement Demand - which Admiral rejected without consulting Wexford - could have resulted in a payment by Wexford of well under "7-figures" if Admiral had contributed all of the insurance coverage to which Wexford, Peters, and Becker were entitled under the Admiral Policies.

16. Admiral offered $3 million to Fox on August 17, 2012 to settle on behalf of

Peters and Becker. Fox accepted the $3 million offer later that day and agreed to dismiss Peters and Becker. After settling on behalf of Peters and Becker, Admiral advised Wexford that that the Admiral policy limits had been exhausted by payment of a single $3 million on behalf of Peters and Becker, but that it nevertheless would continue to defend Wexford "as a courtesy." In response, Wexford wrote that it "disagrees with the position of Admiral and you that only one policy is in effect with regard to this claim, and we object to Admiral's position related to the superficial 'courtesy' defense because we believe Admiral has a continuing duty to properly defend Wexford Health throughout the entirety of this judicial course."

17. By letter dated October 8, 2012 (the "October 8, 2012 Settlement Demand"), Fox offered to dismiss Wexford from the Fox Claim in exchange for $3 million to be paid on November 30, 2012, and an additional payment of $300,000 due in 2013 or later. Later that day, Wexford forwarded the October 8, 2012 letter to Admiral, and demanded that Admiral agree to pay $3 million on behalf of Wexford and stated that Wexford agreed to all other terms of the settlement demand. In its October 8, 2012 letter, Wexford also explained why Admiral's position that it exhausted its coverage obligations to Wexford by paying a $3 million "Each Medical Incident" limit under the Long-Term Healthcare Facilities Professional Liability coverage of Admiral Policy No. E0000000615-11 on behalf of Peters and Becker was incorrect and that, at a minimum, an additional limit of $3 million was available to Wexford under the Personal Injury and Advertising Injury coverage section (Coverage B) of Admiral policies, which expressly covers damages because of "suits brought pursuant to 42 U.S.C.S. 1983 . . . ."

18. Admiral responded to Wexford's demand in a letter dated October 12, 2012, stating that it would not pay $3 million on behalf of Wexford to settle the Fox Claim because it disagreed "that the indemnity payment made on behalf of Dr. Peters and Nurse Becker was made

under coverage D." Admiral also claimed that it would not accept the October 8, 2012 Settlement Demand because Wexford's October 8, 2012 letter did "not indicate whether Wexford is willing to assume total responsibility for the payment of the additional $300,000" and, therefore, "the demand is not for an amount within what Wexford claims is the additional $3 million worth of coverage that is available under the Admiral policy." After Wexford sent a letter back to Admiral reiterating that it would, in fact, pay the additional $300,000, Admiral responded by stating that its policy limits were exhausted and that it would not fund a settlement.

19. When Admiral appointed defense counsel to defend Wexford and conduct all settlement negotiations on Wexford's behalf, and repeatedly informed Wexford that it would not be abandoned by Admiral, Wexford reasonably relied on Admiral to vigorously defend and protect it from uncovered liability at trial, and reasonably expected Admiral to give equal or greater consideration to the interests of Wexford than its own interests when deciding whether to settle the Fox Claim.

20. Johnston, Carlson and Charysh all acknowledged that Wexford faced a reasonable probability of an adverse verdict at trial that would exceed the limits of the Admiral Policies. Yet, when presented with the October 8, 2012 Settlement Demand, which was an offer to settle within the available limits of the 2006-2007 and 2007-08 Admiral Policies, Admiral -- notwithstanding its good faith obligations to settle on behalf of Wexford -- refused to settle and, instead, asserted that its coverage obligations were extinguished by its payment on behalf of Peters and Becker. In support of this position, Admiral took the position, for the first time, that contrary to the position taken in its reservation of rights letters, it had not agreed to provide coverage under the Long-Term Healthcare Facilities Professional Liability coverage part of the

2007-2008 Admiral Policy but, rather, had provided coverage under the Personal and Advertising Coverage of the 2007-2008 Admiral Policy.

21. Although Wexford disagreed with Admiral's interpretation of the available limits of the Admiral Policies, regardless of the coverage part pursuant to which Admiral purportedly settled on behalf of Peters and Becker, Wexford was facing a trial date in less than three weeks and lacked the financial resources to fund Fox's $3.3 million settlement demand and continue its dispute with Admiral regarding coverage. Wexford also lacked the financial resources to risk an adverse judgment at trial. Although Wexford has always denied liability for the Fox Claim, Wexford recognized that it is impossible to predict the outcome of a jury trial and that there was a substantial risk of liability at trial for an amount well in excess of the remaining limits of the Admiral Policies, as Wexford was advised on numerous occasions by Johnston and Charysh. Having been abandoned by Admiral, Wexford had no choice but to protect its assets by negotiating a settlement with Fox.

22. Fox desires to enter into a separate written agreement with Wexford in which he will contract not to seek any recovery from Wexford in exchange for an assignment of all of Wexford's rights against Admiral, whatever they may be, so that he can pursue Admiral not only for the entire $14 million judgment but also for all additional compensatory, consequential, and punitive damages for which Admiral may be liable to Wexford.

In accordance with these stipulations and the agreement of Fox and Wexford, and for good cause shown, the Court hereby orders and enters a judgment in the amount of $14 million, which is comprised of $3 million for emotional pain and suffering through Fox's date of parole, $7 million for increased risk of premature death or additional disability or illness, and $4 million

for punitive damages. Neither the foregoing allocation of the amount of the judgment, which was proposed by Fox, nor any other statement or omission in this Consent Judgment should be construed as a concession by Wexford of any liability to Fox.

    IT IS SO ORDERED.

_____
Honorable JAMES F. HOLDERMAN

AGREED AND APPROVED:

/s/ Michael Kanovitz                  /s/ Seth Lamden (with permission)

Counsel for Ray A. Fox and Rose Fox     Counsel for Wexford Health Sources, Inc.