**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAY A. FOX, by and through his Guardian | ) | |
| ROSE FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 5453 |
| | ) | |
| DAVID BARNES, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

JAMES F. HOLDERMAN, Chief Judge:

On January 18, 2013, a jury returned a verdict in favor of plaintiff Ray A. Fox[1] on his

Eighth Amendment claim under 42 U.S.C. § 1983 that defendant David Barnes failed to provide

adequate medical attention when Fox was incarcerated in the Illinois prison system, causing Fox to

suffer a seizure, a brain aneurysm, and permanent mental damage. (Dkt. No. 446.) The jury

awarded Fox $11 million in compensatory damages and $1 million in punitive damages. (*Id.*)

Prior to trial the court approved, over Barnes's objection, a jury instruction limiting the

damages Fox was seeking at trial to the value of the medical care Fox was likely to receive after the

date of trial on January 14, 2013, the value of the physical pain and suffering Fox experienced at all

times, and the value of the mental pain and suffering Fox suffered after being released from prison.

(Dkt. No. 405.) That limitation meant that the damages the jury awarded to Fox at trial did not

---

[1] Ray Fox's interests in this trial are represented by his guardian and mother, Rose Fox. For simplicity, the court will use the name "Fox" to refer to Ray Fox in this opinion unless otherwise noted.

overlap with the amounts Fox received from settlement agreements with other defendants in the case who were responsible his medical care during the days he was incarcerated. (*See* Dkt. No. 396, at 9-10 (entering a judgment for $14 million against defendant Wexford Health Source, Inc. ("Wexford") for mental pain and suffering before Fox was released from prison, Fox's increased risk of premature death, and punitive damages); Dkt. No. 478 ($3 million settlement agreement with defendants Constantine Peters and James Becker for the value of the medical care Fox received prior to October 1, 2012).)

Barnes now moves under Federal Rule of Civil Procedure Rule 59(a)[2] for a new trial and under Rule 59(e)[3] for a setoff. (Dkt. No. 450.) The court has granted leave to Admiral Insurance Company, Wexford's insurer against whom Fox has asserted a claim for the judgment against Wexford, to file a brief on Barnes's motion. (Dkt. No. 476.) Fox has responded to that brief (Dkt. No. 477), and Admiral Insurance Company has replied. (Dkt. No. 484).

I.      Motion for a New Trial

Barnes argues first that the court erred by excluding certain items from the damages that the jury was instructed to award to Fox, and that this error requires a new trial. "A court may only order a new trial if the jury's verdict is against the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir.

---

[2] Barnes does not specify that his motion for a new trial comes under Fed. R. Civ. P. 59(a). Because Rule 59(a) is the appropriate vehicle under which to move for a new trial, the court will construe Barnes's motion as a Rule 59(a) motion.

[3] Barnes's motion also cites Rule 60(b). Because the motion was timely filed within the twenty-eight day deadline in Rule 59(e), however, the court will treat it as a Rule 59(e) motion, rather than a Rule 60(b) motion. *See Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995) ("The time of a motion's service controls whether a motion challenging a judgment is a 60(b) or a 59(e) motion.").

2012) (quotation marks, citation, and alteration omitted). "To prevail on a Rule 59(a) motion based on erroneous jury instructions, the [movant] must establish that (1) the instructions did not adequately state the law, and (2) the error was prejudicial because the instructions confused or misled the jury." *Purtell v. Mason*, No. 04 C 7005, 2006 WL 2037254, at *4 (N.D. Ill. July 18, 2006) (citing *Byrd v. Ill. Dep't. of Pub. Health*, 423 F.3d 696, 705 (7th Cir. 2005)). Erroneous jury instructions are prejudicial only if "considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law." *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004).

Barnes contends that, in federal § 1983 cases as well as under the law of most states, "[i]t is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the *entire injury*." *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) (emphasis added) (applying principle in a § 1983 suit). The principle of joint and several liability, however, establishes only that a plaintiff may, if he desires, proceed against any of several joint tortfeasors for his injury. *See id.* ("In such a case the injured party *may* proceed to judgment against any or all of the responsible actors in a single or in several different actions." (emphasis added)). The principle does not require that the plaintiff must necessarily seek damages for the entire injury from each joint tortfeasor.

It is true, as Admiral Insurance Company contends, that "damages are not assessed 'by defendant' or 'by claim' but 'for' an injury." *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 640 (7th Cir. 2011) (finding that it was error to issue instructions suggesting that the jury should assess damages as to each of two jointly and severally liable defendants). That principle does not mean, however, that a plaintiff may not forfeit certain items of damages flowing from an injury.

3

To the contrary, it is well-established that "the plaintiff is the master of its own litigation." *Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 651 (7th Cir. 2003). Barnes presents no argument why that principle is inapplicable here, nor does he explain why Fox should not be allowed to limit the damages that he seeks through a limiting instruction to the jury.[4] Plaintiffs commonly limit the damages they seek in other contexts. *See, e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) (stating that plaintiffs may disclaim damages over $75,000 to avoid diversity jurisdiction, so long as the disclaimer is binding). Accordingly, the court did not err in allowing Fox to limit the damages he sought from the defendants who went to trial.

II.     Motion for a Setoff

Barnes next contends that he is entitled to a setoff for the amount that the other defendants have agreed to pay in their settlement agreements with Fox. A motion under Rule 59(e) to alter or amend the judgment is an appropriate vehicle to request a setoff of a jury verdict. *See Zivitz v. Greenberg*, 279 F.3d 536, 539 (7th Cir. 2002).

Fox contends first that federal law on the existence of a right of contribution in § 1983 cases resolves the setoff issue here. The Supreme Court has held that it will not add a common law right of contribution to a federal statute unless Congress has directed that doing so is appropriate. *See Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 98 (1981) ("[W]e

---

[4] It is irrelevant that Fox sought all possible damages from each of the defendants in his Third Amended Complaint. (Dkt. No. 109 ¶ 36.) The final pretrial order, including in this case the proposed jury instructions (*See* Dkt. No. 434), supersedes the pleadings, and represents the positions of the parties at trial. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 465 (2007). There is no reason to prohibit a party from abandoning a claim or an item of damages in the final pretrial order that the party asserted in the pleadings. Indeed, if a party does forego an item of damages or a claim, as Fox did here, that party has waived any recovery of those damages and under that claim. *Babby v. City of Wilmington Dep't of Police*, 614 F. Supp. 2d 508, 510-511 (D. Del. 2009) ("Legal theories and issues not raised in the pretrial order are considered waived.").

are satisfied that it would be improper for us to add a right to contribution to the statutory rights that Congress created in the Equal Pay Act and Title VII."); *see also Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981) ("[W]e recognize that, regardless of the merits of the conflicting arguments, this is a matter for Congress, not the courts, to resolve."). Although neither the Supreme Court nor the Seventh Circuit has addressed the question, "a majority of District Courts that have addressed the issue" have reached the conclusion that § 1983 does not provide a right of contribution. *Estate of Carlock ex rel. Andreatta-Carlock v. Williamson*, No. 08-3075, 2009 WL 1708088, at *4 (C.D. Ill. June 12, 2009); *see also Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 427 n.17 (E.D.N.Y. 2009) ("Moreover, the majority of cases decided since *Northwest Airlines* have held that there is no right to contribution under § 1983."). Fox contends that this court should follow the majority and hold that no contribution is available in § 1983 cases.

The question of a setoff, however, is distinct from a right of contribution. A right of contribution is the right of a joint and several tortfeasor to bring a distinct cause of action against a fellow defendant to apportion the cost of damages, while a setoff is a procedural device for adjusting a verdict to avoid a windfall to the plaintiff. *See* Martin A. Schwartz, *Section 1983 Litigation Claims and Defenses* § 16.15 (rev. 2013) (addressing both setoff and the right of contribution). Thus, the Seventh Circuit has made plain that a defendant may still be entitled to a setoff, even when a cause of action for contribution is unavailable:

> [I]f there is no right of contribution under ERISA[,] . . . . the nonsettling defendants would still have a practical interest in the settlement. Since a plaintiff's total recovery, from all the tortfeasors together, is not allowed to exceed his total damages, *the amount that the nonsettling defendants will have to pay will be smaller, the larger the settlement is.*

*Donovan v. Robbins*, 752 F.2d 1170, 1178 (7th Cir. 1985) (emphasis added); *see also Resolution*

5

*Trust Corp. v. Gallagher*, 815 F. Supp. 1107, 1108 (N.D. Ill. 1993) ("Our resolution of the settlement bar rule is necessary *regardless of whether the defendants have a right to seek contribution from one another*, because the parties cannot evaluate the effect of individual settlements on RTC and the remaining nonsettling defendants until this Court has determined whether the pro tanto or comparative fault rule applies." (emphasis added)).

Moreover, one of the reasons for denying a right of contribution in § 1983 cases is not applicable to setoffs. A right of contribution is a right to an independent claim for relief, and federal courts are hesitant to create new claims under a federal statute unless Congress has explicitly authorized such a practice. *See Moor v. Alameda Cnty.*, 411 U.S. 693, 703-04 (1973); Schwartz, *Section 1983 Litigation Claims and Defenses* § 16.15. A setoff, by contrast, is not a new claim for relief. Cases addressing the right of contribution thus do not resolve Barnes's claim to a setoff.

Before analyzing Barnes's claim to a setoff further, the court should determine which law applies, federal or state. Barnes's argument focuses on general principles of joint and several liability, and cites cases applying both federal law and Illinois law. Fox contends, by contrast, that Illinois common law is inapplicable to this federal § 1983 action, and that under federal law, there is no right to a setoff in § 1983 cases. The reality is somewhat more complex than either party suggests.

In general, "[f]ederal common law principles of tort and damages govern recovery under section 1983." *Watts*, 774 F.2d at 179. Both the Supreme Court and the Seventh Circuit have recognized, however, that the content of the federal common law a court is to apply must be determined through the process outlined in 42 U.S.C. § 1988, including, where appropriate,

6

through reference to principles of state law. *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 240 (1969) ("[B]oth federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes. . . . The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired." (citation omitted)); *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985) ("Section 1988 establishes a three-step process for the selection of the appropriate substantive law in civil rights actions.").

Neither party's briefing mentions § 1988. Because § 1988, however, is directly applicable by its terms to the resolution of the choice of law question, the court will consider it. Section 1988 provides that:

> The jurisdiction in civil and criminal matters conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

The Seventh Circuit has explained the operation of § 1988 as follows:

> First, it is to be determined whether federal civil rights law is deficient in that it fails to furnish a particular rule; if it is deficient, the most closely analogous state law may fill the vacuum only if it is consistent with the meaning and purpose of constitutional and federal statutory law. If state law is inconsistent, it must be disregarded in favor of the federal common law.

*Bass*, 769 F.2d at 1188.[5] The court will apply that three-step process to determine the appropriate

---

[5] This three-step process provides a means to apply the Supreme Court's comments in *Carey v. Piphus*, 435 U.S. 247 (1978) on the appropriate damages law in § 1983 cases:

setoff rule to apply.

Here, § 1983 is silent on the question of when a setoff for a prior settlement against a joint and several tortfeasor is appropriate. The court will thus consider Illinois law on the question. The most closely analogous Illinois law is the Joint Tortfeasor Contribution Act, 740 ILCS 100/2(c), which provides that:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death . . . it reduces the recovery on any claim against [any] other [tortfeasors] to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

The Illinois Supreme Court has explained the purposes of § 2(c):

> Section 2(c) reflects the long-recognized principle in Illinois that a plaintiff shall have only one satisfaction for an injury. A double recovery is a result which is condemned and is exactly what section 2(c) of the Contribution Act was intended to prevent.
>
> The provision reflects as well the public policy of protecting the financial interests of nonsettling parties in a settlement. Allowing setoff ensures that a nonsettling party will not be required to pay more than its pro rata share of the shared liability.
>
> Thus, under section 2(c), it has been held that a settlement between one tortfeasor and the plaintiff will result in an equal setoff in amount against the recovery a nonsettling tortfeasor receives.

*Pasquale v. Speed Prods. Eng'g*, 654 N.E.2d 1365, 1381-82 (Ill. 1995) (citation omitted). The

---

> It is not clear . . . that common-law tort rules of damages will provide a complete solution to the damages issue in every § 1983 case. In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right. In such cases, it may be appropriate to apply the tort rules of damages directly to the § 1983 action. In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law torts. In those cases, the task will be the more difficult one of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right.

*Id.* at 258 (citations omitted).

straightforward application of § 2(c) would entitle Barnes to a setoff for the amount of Fox's settlements with Wexford, Becker, and Peters.

A complicating factor, however, is that Fox sought different items of damages from Barnes than the items for which he recovered in the settlement agreements. Because the settling defendants and Barnes are obligated to pay for separate items of damages, Fox asserts that there is no overlap in the payments and no need for an adjustment of the verdict through a setoff.

In support of his argument, Fox cites the *Restatement (Second) of Torts* § 885(3) & cmt. e (1979). That section of the *Restatement* establishes that "[a] payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made." *Id.* § 885(3). The comment elaborates that "[i]f the payment is made as full satisfaction for a specified item of damage, the claim against the others is terminated with respect to that item." Even assuming that Illinois courts would apply that comment from the *Restatement*,[6] however, it does not resolve the question before the court. The comment, if it applies, merely establishes that Fox could not seek compensation from Barnes for the specific damages items for which the settling defendants paid. It does not necessarily preclude Barnes from obtaining a setoff for the jury verdict against him as to different specific damages items.

Indeed, when defendants are jointly and severally liable, they are each responsible for the entirety of a "single, indivisible injury"[7]—in this case, the failure to provide Fox medical care

---

[6] Illinois courts have cited § 885 of the *Restatement* when interpreting § 2(c). *See, e.g.*, *Brown v. Timpte Inc.*, 485 N.E.2d 488, 491 (Ill. App. Ct. 1985).

[7] *Watts*, 774 F.2d at 179.

adequate to satisfy the requirements of the Constitution.[8] That single injury caused Fox to suffer a variety of divisible items of damages, including the cost of medical care for his injury, pain and suffering, lost wages, the risk of premature death, and so on. Each of those items of damages can be further subdivided temporally, as they were here, for example, into the medical care Fox received before trial and the medical care Fox is likely to receive after trial. Nonetheless, the defendants are still jointly and severally liable for the *entire injury*, and each defendant is thus potentially on the hook for every item of damages proximately caused by the injury.

That fact is important because a plaintiff and a settling defendant might easily agree to a settlement amount far in excess of the items of damages included in the settlement's scope. By so doing, a plaintiff could avoid any applicable setoff rules and thereby achieve a double recovery. For example, imagine two defendants who are jointly and severally liable for an injury. The plaintiff's total damages are $1 million, including $250,000 for medical care, $25,000 of which was incurred in the week immediately following the injury. The plaintiff could arrange to settle with joint tortfeasor Defendant A for $250,000, but specify in the settlement agreement that the entire $250,000 is for medical care in the week following the injury. The plaintiff goes to trial against Defendant B, seeking all of his damages except the cost of medical care in the week following the injury. Under this scenario, the jury would award $975,000, giving the plaintiff a

---

[8] Fox does not dispute that the settling defendants and Barnes are all jointly and severally liable for his injury. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 315 (7th Cir. 2010) ("[L]iability among defendants in a § 1983 case is joint and several—at least in the usual case of one plaintiff with a single indivisible injury."). In its response to the brief of Admiral Insurance Company, Fox contends for the first time that Fox actually suffered multiple constitutional injuries because he suffered multiple seizures. (Dkt. No. 477, at 14.) This argument is without merit because it is impossible, on the evidence presented at trial, to distinguish the harm caused by the multiple seizures and to allocate the harm from a particular seizure to a particular defendant's conduct.

total recovery of $1,225,000. The extra $225,000 is a windfall to the plaintiff resulting from his circumvention of the rule that a plaintiff may only recover once for his injury. The way to avoid this windfall would be to offset the verdict by $225,000, the amount by which the settlement exceeds the actual value of the items of damages to which the settlement was allocated.[9]

Illinois appellate courts have directly addressed the danger that a plaintiff may manipulate the allocation of a settlement to increase his recovery improperly under § 2(c). In *Lard v. AM/FM Ohio, Inc.*, 901 N.E.2d 1006 (Ill. App. Ct. 2009), several plaintiffs sought court approval of a settlement that proposed to wait until after approval to allocate the settlement funds among several plaintiffs and several claims. *Id.* at 1017. A nonsettling defendant objected, contending that "the failure to allocate invites inequitable apportionment among the plaintiffs and manipulation of future setoffs" and that "plaintiffs could enhance their recovery from the remaining solvent defendants by allocating more settlement funds to plaintiffs with weaker cases, which are then dismissed while plaintiffs with stronger cases proceed to trial." *Id.* The Illinois appellate court held that § 2(c)'s requirement that a settlement be entered in "good faith" before the settlement can be offset against a later jury verdict guarded against that danger. *Id.* at 1018. The court then elaborated:

> Although the manipulation of an allocation can be evidence of bad faith in a settlement negotiation, it is not per se bad faith to engage in the advantageous apportioning of a settlement. This court has recognized the importance of allowing the settling parties to apportion their settlements to their advantage. Specifically, in

---

[9] Of course, a complicating factor is that the settlement amount is usually discounted to account for the uncertainty of proceeding to trial. A defendant who settles for $250,000 and has a 50% chance of prevailing at trial has likely estimated its actual liability at $500,000. This effect means that the plaintiff is, in actuality, recovering even greater value because the settlement allows it to remove the uncertainty of recovery against the settling defendants, without decreasing by much the ultimate amount it can recover at trial.

*Muro v. Abel Freight Lines, Inc.*, 283 Ill.App.3d 416, 218 Ill.Dec. 691, 669 N.E.2d 1217 (1996), we stated:

"A plaintiff who enters into a settlement with a defendant gains a position of control and acquires leverage in relation to a nonsettling defendant. This posture is reflected in the plaintiff's ability to apportion the settlement proceeds in the manner most advantageous to it. Settlements are not designed to benefit nonsettling third parties. They are instead created by the settling parties in the interests of these parties. If the position of a nonsettling defendant is worsened by the terms of a settlement, this is the consequence of a refusal to settle.

A defendant who fails to bargain is not rewarded with the privilege of fashioning and ultimately extracting a benefit from the decisions of those who do."

*Id.* at 1018-19 (citation and alteration omitted).

Thus, although there is a danger that plaintiffs may improperly allocate a settlement to achieve a double recovery of a portion of their damages, the burden is on the defendant seeking a setoff to demonstrate that the plaintiff's allocation is improper and, ultimately, that the settlement was entered into in bad faith. *See Pasquale*, 654 N.E.2d at 1382 ("Generally, the party seeking the setoff bears the burden of proving what portion of a prior settlement was allocated or is attributable to the claim for which he is liable."). In this case, for example, Barnes could attempt to show that the amounts Fox received in his settlements with Wexford, Becker, and Peters were grossly out of proportion to any reasonable estimate of the items of damages to which those amounts were allocated. But Barnes has presented no evidence regarding the value of the items of damages specified in Fox's agreements with the settling defendants, nor has Barnes presented any other evidence that Fox entered the settlements in bad faith. Consequently, the court has no basis to conclude that the settlement was improper. Under Illinois law, therefore, Barnes would not be entitled to a setoff because of his failure to demonstrate that Fox's settlements were motivated by bad faith.

12

Federal common law, if the court were inclined to apply it, would lead to a similar result. The Supreme Court has explained that, broadly speaking, there are two possible rules to govern the allocation of damages among settling and nonsettling defendants. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208-09 (1994). The first is the *pro tanto* rule, under which the nonsettling defendant receives a dollar for dollar credit against the judgment for the amount of the settlement. *Id.* at 209.[10] This approach is equivalent to the approach adopted in the Illinois Joint Tortfeasor Contribution Act. The second approach is the "proportionate share" approach under which the nonsettling defendant is responsible only for a share of the jury verdict equal to his proportionate share of fault for the injury. *Id.* Under that rule, the nonsettling defendant can receive a setoff of any verdict against him from the settlement amount, up to the settling defendants' proportionate share of the damages. *Id.* The court in *McDermott* ultimately adopted the "proportionate share" approach. *Id.* at 217.

Fox contends that this court should follow *McDermott* and adopt the proportionate share approach for § 1983 cases. The problem with that argument, however, is that *McDermott* arose in the context of admiralty law and depended in large part on developing a rule consistent with the proportionate fault approach to damages applicable in admiralty. *Id.* at 211 ("The proportionate share rule is more consistent with *Reliable Transfer*['s establishment of the proportionate fault approach], because a litigating defendant ordinarily pays only its proportionate share of the judgment."). By contrast, under § 1983, liability is joint and several, rather than comparative, so

---

[10] The Supreme Court addressed two different versions of the *pro tanto* rule, one in which nonsettling defendants have a right of contribution against settling defendants, and one in which they do not. *McDermott*, 511 U.S. at 209. The existence or nonexistence of a right of contribution in this case must be resolved, if necessary, among the defendants at a later time, so the difference is immaterial for present purposes.

there is ordinarily no need to allocate fault among the defendants. The Seventh Circuit has thus explicitly declined to apply *McDermott*'s proportionate share rule to a claim under the Federal Employers Liability Act to which principles of joint and several liability are applicable. *See Schadel v. Iowa Interstate R.R., Ltd.*, 381 F.3d 671, 678 (7th Cir. 2004) ("But there is an important, and we think dispositive, difference between *McDermott* and this FELA case. Under the admiralty rule adopted by the Court in *McDermott*, each defendant is responsible for only its proportionate share of the liability . . . ."); *see also Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 308 (7th Cir. 1999) (declining to apply *McDermott* to a CERCLA claim because "it is best to match the handling of settlements with the way intersecting principles of law work"). It would be similarly inappropriate to apply the proportionate share rule to a § 1983 claim, particularly when the factfinder did not allocate fault at trial. [11] *See McDermott*, 511 U.S. at 217 ("Under the

---

[11] The court notes that the Supreme Court in dicta in *McDermott* suggested that the proportionate share approach also could apply in a situation of joint and several liability:

> [T]here is no tension between joint and several liability and a proportionate share approach to settlements. Joint and several liability applies when there has been a judgment against multiple defendants. It can result in one defendant's paying more than its apportioned share of liability when the plaintiff's recovery from other defendants is limited by factors beyond the plaintiff's control, such as a defendant's insolvency. When the limitations on the plaintiff's recovery arise from outside forces, joint and several liability makes the other defendants, rather than an innocent plaintiff, responsible for the shortfall. . . . [T]he proportionate share rule announced in this opinion applies when there has been a settlement. In such cases, the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle. There is no reason to allocate any shortfall to the other defendants, who were not parties to the settlement.

*McDermott*, 511 U.S. at 220-21; *see also* Schwartz, *Section 1983 Litigation Claims and Defenses* § 16.15 ("Although *McDermott* is an admiralty case, the decision is based primarily on general tort principles. It appears to establish federal common-law principles governing the settlement setoff issue that can be applied in § 1983 actions."). Nonetheless, this court must follow the Seventh Circuit's direction that the proportionate share approach does not apply in situations of joint and

proportionate share approach, the allocation will take place at trial."). If federal common law applies, the court would thus apply the *pro tanto* rule.

A straightforward application of the federal common law *pro tanto* rule would entitle Barnes to a dollar for dollar setoff of the amount of Fox's settlements. Again, however, Fox's allocation of certain items of damages to the settling defendants and others to the nonsettling defendants presents a complicating factor.

The parties have not identified, and the court has not found, any case applying federal common law that directly addresses setoff when a plaintiff has apportioned damages between settling and nonsettling defendants in a § 1983 case. Admiral Insurance Company contends that the court should follow *Janusz v. City of Chicago*, No. 03 C 4402, 2012 WL 1658302 (N.D. Ill. May 10, 2012), where Judge Gottschall, a respected colleague, held that the defendant was entitled to a setoff of the settlement amount from an earlier state court case, but that decision rested primarily on principles of judicial estoppel that are not applicable here. *See id.* at *9. Judge Gottschall in *Janusz* did, however, express the concern that a plaintiff's apportionment of damages may improperly deprive a defendant of a setoff. *Id.* ("But at the very least, the reapportionment of damages in such a drastic fashion—and in a manner that would deprive the City defendants of much of their right to a setoff—highlights the need to apply judicial estoppel in this case.").

On the other side, Fox urges the court to bless its allocation of damages and reject a setoff under the authority of *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971), in which the Supreme Court denied a setoff on the ground that a previous settlement "was understood by the parties" to cover damages for a different period than the damages sought at trial. *Id.* at 348.

---

several liability.

The setoff issue was not properly presented to the Supreme Court in *Zenith*, however, so its comments on the subject are dicta. *Id.* ("Since the claim was untimely presented below, was not pressed here, and is not sustainable on the facts contained in the record, we see no basis for its further consideration."). Moreover, *Zenith* did not consider a situation in which the allocation of damages might lead to overcompensating the plaintiff, instead expressly reaffirming the principle that overcompensation should be avoided. *Id.* ("It is settled that . . . a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another conspirator; the law, that is, does not permit a plaintiff to recover double payment.").

Neither *Zenith* nor *Janusz* fully resolves the issue of how federal common law should treat a plaintiff's apportionment of damages among settling and nonsettling defendants in a § 1983 case. In the absence of any other authority, the court once again takes its cues from *McDermott*. In *McDermott*, the Supreme Court explained that the application of the *pro tanto* rule typically is accompanied by a "good-faith hearing" at which the nonsettling defendant has the opportunity to demonstrate the unfairness of a settlement. *McDermott*, 511 U.S. at 213 ("Courts and legislatures have recognized this potential for unfairness [under the *pro tanto* rule] and have required 'good-faith hearings' as a remedy."); *see also id.* at 216 ("Nevertheless, because of the large potential for unfairness, no party or amicus in this suit advocates the *pro tanto* rule untamed by good-faith hearings."). Those comments suggest that if a plaintiff does allocate its damages to settling and nonsettling defendants, it must do so in good faith. Indeed, any other rule would leave the plaintiff an unchecked opportunity to manipulate the apportionment of a settlement to obtain a double recovery.

The court may also consider the common law of the state in which the case arises when

16

crafting a rule of federal common law. *Schadel v. Iowa Interstate R.R., Ltd.*, 381 F.3d 671, 677 (7th Cir. 2004) ("It is well-established that federal common law may either create a single rule of law that is applicable to all cases in a particular area, or it may adopt as federal law the rule of the state in which the case arises."). As explained above, Illinois courts allow a plaintiff to allocate damages in a settlement to its advantage, so long as the plaintiff has not entered into the settlement in "bad faith." *Lard*, 901 N.E.2d at 1018. Illinois law, like the Supreme Court's *McDermott* opinion, thus suggests that this court, under the circumstances present here, should honor Fox's allocation of damages between settling and nonsettling defendants so long as the settlement was reached in good faith. As with Illinois law, a settlement amount that is grossly out of proportion to any reasonable estimate of the damages flowing from an item of damages to which it is allocated may be evidence of a bad faith settlement, although it is not dispositive. *Id.*

Such a rule is also consistent with the purposes behind § 1983, which are "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 591 (1978); *accord Owen v. City of Independence, Mo.*, 445 U.S. 622, 651 (1980) ("Moreover, § 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well."). Applying the *pro tanto* rule without accounting for Fox's allocation of damages here potentially means that Barnes would be entitled to a setoff of $3 million for Fox's settlement with Peters and Becker, and up to $14 million for Fox's settlement with Wexford. Under that scenario, Barnes might thus escape without paying any of the $11 million the jury awarded Fox against Barnes for compensatory damages. Such a result would thwart § 1983's purpose of deterrence. On the other hand, allowing Fox to allocate damages to the settling and

nonsettling defendants as he pleases without requiring that he do so in good faith creates the danger that Fox could obtain a double recovery. That result would thwart § 1983's purpose of fairly compensating, but not overcompensating, a plaintiff for his injury. *See Watts*, 774 F.2d at 179 (stating in a § 1983 suit that "the very nature of damages as compensation for injury suffered requires that once the plaintiff has been fully compensated for his injuries by one or more of the tortfeasors, he may not thereafter recover any additional compensation from any of the remaining tortfeasors"). Respecting the plaintiff's allocation of damages in a settlement, so long as the settlement is made in good faith, is the best way to protect both of § 1983's purposes.

Because the issue of setoff is an affirmative defense under federal law, defendant Barnes here bears the burden of proof on the issue, including the burden of showing that any prior settlement was not entered into in good faith and that the plaintiff's allocation of damages was inappropriate. *See King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012) ("[T]he proponent of an affirmative defense has the burdens of both production and persuasion."); *Banks ex rel. Banks v. Yokemick*, 177 F. Supp. 2d 239, 265 (S.D.N.Y. 2001) (applying *McDermott*'s proportionate share approach and allocating the burden to the defendant seeking the setoff).[12] In this case, again, Barnes has presented no evidence regarding the value of the items of damages

---

[12] Admiral Insurance Company contends that *McDermott* places the burden on the plaintiff to prove a setoff under the proportionate share rule. *McDermott* allocated the burden to the plaintiff, however, only when the plaintiff has received "*less* than the proportionate share that the jury might later assess against the settling defendant." *McDermott*, 511 U.S. at 219. "In such cases," the Supreme Court stated, "the entire burden of applying a proportionate share rule would rest on the plaintiff, and the interest in avoiding overcompensation would be absent." *Id.* That statement says nothing about the situation here, where the plaintiff's allocation of damages means that it has potentially recovered more than its total damages, and overcompensation is a concern. The court will therefore apply the general rule that a defendant bears the burden of pleading and proving an affirmative defense.

specified in Fox's agreements with the settling defendants, nor has Barnes presented any other evidence that Fox entered the settlements in bad faith. Accordingly, Barnes has not met his burden of showing that he is entitled to a setoff under the proportionate share rule of *McDermott*. Under both Illinois law and federal common law, Barnes has therefore failed to meet his burden to show that he is entitled to a setoff, and his motion for a setoff must be denied.

In adopting this resolution, the court is mindful that the law applicable to the setoff question was unclear prior to trial. *See Banks*, 177 F. Supp. 2d at 266 (because law was unclear prior to trial, court declined to hold defendant responsible for failure to meet burden of showing entitlement to a setoff, and instead "reserve[d] final judgment on this matter pending further proceedings and discussions with the parties with regard to a proper resolution of the issues raised here"). The difficulty was particularly acute because of Fox's unusual tactic of allocating the settlements to specific items of damages that were identifiable, divisible, and different from the specific items of damages Fox sought from Barnes at trial. Additionally, the ambiguity in this area was compounded by the failure of both parties to recognize the applicability of § 1988, as shown by the absence of any briefing on the topic.

Nonetheless, the court determines that Barnes should bear the responsibility for his failure to meet his burden. First, Barnes should have been aware of the setoff issue after Fox's settlements with Becker, Peters, and Wexford in October 2012, almost three months before the trial proceeded. (Dkt. Nos. 395, 396.) Barnes therefore had ample time to research the issue. Second, both Illinois law and federal common law required Barnes to show that Fox did not enter the settlements in good faith.[13] Regardless of which law Barnes thought applicable, he thus was or should have been

---

[13] Barnes's responsibility to present additional evidence regardless of whether Illinois or

on notice of his burden to show his entitlement to a setoff by demonstrating that Fox did not settle in good faith. Nonetheless, Barnes did nothing on this issue, including not seeking further clarification from the court about which law should apply. Upon analysis of the record, the court holds that Barnes has failed to meet his burden of demonstrating that he is entitled to a setoff.

Although the court has considered the position of Admiral Insurance Company on Barnes's motion, the court takes no position as to whether Admiral Insurance Company is entitled to a setoff of any damages in this case.

<u>CONCLUSION</u>

For the reasons stated above, Barnes's "Post Trial Motion" (Dkt. No. 450) is denied in its entirety.

ENTER:

James F. Holderman

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: May 15, 2013

---

federal common law applies distinguishes this case from *Banks*. There, the court decided between New York and federal common law. *Banks*, 177 F. Supp. 2d at 254. Under New York law, the defendant was entitled to a setoff of the total amount of the jury verdict. *Id.* If the defendant assumed that New York law was applicable, he would not have been on notice of the need to put on additional evidence to meet his burden. The court thus determined that his failure to do so was excusable, in light of the ambiguity about whether New York or federal common law should apply.

20