**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAY A. FOX, by and through his Guardian ROSE FOX, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 09 C 5453 ) |
| DAVID BARNES, | ) ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Ray A. Fox's[1] Third Amended Complaint (Dkt. No. 109) alleged that defendants Dr. Constantine Peters, Terry McCann, Wexford Health Sources, Inc., Ivetta Sangster, David Barnes, Sean Roycroft, Royce Brown-Reed, Rosaline Curtis, Michael Brewer, Marlon Brown, Julius Encarnacion, Michael Pasqua, Michael Borkowski, Karen Fryer, Joseph Sheehy, and James F. Becker violated his Eighth Amendment rights through deliberate indifference to his serious medical needs by failing to provide him the medication and medical attention he needed to avoid suffering an epileptic seizure while he was incarcerated. Four defendants were dismissed on summary judgment. (Dkt. No. 220.) Fox settled with three other defendants and voluntarily dismissed several others from the case. Eventually, Fox proceeded to trial against two defendants, Michael Borkowski and David Barnes, on his Eighth Amendment claim.

---

[1] Ray Fox's interests in this case have been and continue to be represented by his guardian and mother, Rose Fox. For simplicity, the court will use the name "Fox" to refer to Ray Fox in this opinion.

On January 18, 2013, a jury returned a verdict finding Borkowski not liable. The jury, however, returned a verdict in favor of Fox on his Eighth Amendment claim against Barnes, finding Barnes liable for failing to provide adequate medical attention when Fox was incarcerated in the Illinois prison system. (Dkt. No. 446.) The jury awarded Fox $11 million in compensatory damages and $1 million in punitive damages. (*Id.*) Currently pending before the court is Fox's bill of costs (Dkt. No. 451) and fee petition (Dkt. No. 534), seeking $1,234,180.00 in fees and $195,518.66 in costs.

Under the Civil Rights Attorney's Fees Awards Act, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988. Moreover, the Federal Rules of Civil Procedure provide that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The parties have conferred regarding the appropriate fee award in this case pursuant to Northern District of Illinois Local Rule 54.3(d). The parties agree about most aspects of the award of costs and fees, including that the fee award should be calculated by the lodestar method of a reasonable hourly fee times the number of hours reasonably expended, the number of hours that were reasonably expended in this case, and a reasonable hourly fee for many of the attorneys. The only disputed questions are (1) whether the award of fees and costs should be reduced by 50% because Fox prevailed against only one party at trial, and (2) the billing rate applicable to the hours worked by attorneys Michael Kanovitz, Jon Loevy, Aaron Mandel, and Elizabeth Wang.

I.  Reduction in Fees and Costs

Barnes contends that the fees and costs requested by Fox should be reduced by 50% because Fox prevailed against only Barnes at trial, but did not prevail against Borkowski. (Dkt.

No. 532, at 2-3.) In addition, Barnes asserts that Fox requested a $112 million verdict, and obtained $12 million, only 10.7% of his demand. According to Barnes, Fox's attorneys therefore obtained limited success at trial.

As the Supreme Court has held, however, the hours spent pursuing an unsuccessful claim should be excluded from a fee award only if the claim "is distinct in all respects from [the plaintiff's] successful claims." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Thus, "when time is spent jointly preparing two distinct claims, the fact that one claim produces no recovery will not deprive the plaintiff of every hour spent in joint preparation." *Nanetti v. Univ. of Ill. at Chi.*, 944 F.2d 1416, 1419 (7th Cir. 1991). Here, Barnes does not contend that the claim against him was distinct from the claim against Borkowski. Nor could he. Both Barnes and Borkowski allegedly contributed to Barnes's single injury by failing to provide him medical care adequate to satisfy the Constitution. Accordingly, the court will not reduce the award because Borkowski was found not liable.

Similarly, the court will not reduce the award because Fox recovered only $12 million out of an alleged $112 million request at trial. First, Barnes did not raise this argument in the parties' joint Local Rule 54.3(e) statement, and so it is waived. *Ratliff v. City of Chi.*, 10 C 739, 2013 WL 3418070, at *5 (N.D. Ill. July 8, 2013) (Dow, J.). Even if it were not waived, Barnes has provided no record evidence that Fox requested $112 million at trial, and Fox disputes that he made such a request. (Dkt. No. 533, at 6-7.) Moreover, the only authority Barnes cites in favor of considering the difference between the amount sought and the amount awarded to determine attorney's fees is *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir. 1993). *Cartwright* held that the court should consider the difference between the judgment and the recovery sought to determine whether a

3

victory is *de minimis* or technical and thus worthy of a sharply reduced fees award. *Id.* In other situations without a *de minimis* or nominal award of damages, that analysis "is not relevant." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). *Cartwright* thus does not support reducing the fee award in this situation. Finally, Barnes's position, if adopted, would create an incentive for plaintiff's attorneys to lower the amount they seek for their clients, an incentive that would conflict with their ethical obligation of zealous advocacy. The court declines to create such a conflict of interest for plaintiff's attorneys in civil rights cases. The court thus will not reduce Fox's attorney's fee award because he obtained a verdict of only $12 million at trial against only Barnes and not Borkowski.

II.     Hourly Rates

Fox requests an hourly rate of $495 for Michael Kanovitz, $505 for Jon Loevy, $335 for Aaron Mandel, and $335 for Elizabeth Wang. (Dkt. No. 534, at 5.) Barnes contends that appropriate hourly rates are $450 for Michael Kanovitz, $450 for Jon Loevy, $285 for Aaron Mandel, and $285 for Elizabeth Wang. (Dkt. No. 532, at 3-4.)

> A court should consider the following factors when setting a reasonable hourly rate:
>
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. "The burden of proving the 'market rate' is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Spegon v. Catholic Bishop of Chi.*,

4

175 F.3d 544, 554-55 (7th Cir. 1999). Here Fox had submitted affidavits from each of the attorneys regarding their billing rates, billing records, an expert report by Bruce Meckler surveying prevailing hourly rates in the Chicago area, the Laffey Matrix,[2] and citations to other cases with comparable hourly rate awards to the attorneys in question and other comparable attorneys. Considering the *Hensley* factors, the court finds that Fox has amply met his burden of demonstrating that the requested hourly rates are appropriate.

In an attempt to dispute the hourly rates of Loevy and Kanovitz, Barnes cites two cases from several years ago in which Jon Loevy was awarded lower hourly rates. Dkt. No. 540, *Warfield v. City of Chi.*, No. 05 C 3712 (N.D. Ill. Aug. 17, 2010) ($410); Dkt. No. 360, *Dunn v. City of Chi.*, No. 04 C 6804 (N.D. Ill. Nov. 3, 2010) ($450). The court finds that the amount Jon Loevy was awarded almost three years ago is of limited relevance and does not sufficiently discredit the other evidence the plaintiffs have submitted in support of their requested hourly rates. Indeed, hourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney, suggesting that rates higher than those awarded three years ago are appropriate.

Barnes also challenges the use of current hourly rates to compensate for work performed over the past several years, when the attorneys had less experience. But the Seventh Circuit has explicitly endorsed that practice to compensate for the delay in payment in civil rights cases.

---

[2] The Laffey matrix is a table of hourly rates prepared by the United States Attorney's Office in the District of Columbia for attorneys in the Washington, D.C. area. The Seventh Circuit has not explicitly endorsed the use of the Laffey matrix, but courts in this district have accepted it as evidence of a reasonable hourly rate. *See Hadnott v. City of Chicago*, No. 07 C 6754, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010) (Schenkier, M.J.) (citing cases and concluding "that the Laffey Matrix is 'satisfactory evidence' of the prevailing rate, so that the burden shifts to opposing counsel to show why a lower rate is essential").

*Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 744-45 (7th Cir. 2003) ("We have allowed district courts to use either current rates or past rates with interest when calculating the lodestar amount because either method provides an adjustment for delay in payment which is an appropriate factor in the determination of what constitutes a reasonable attorney's fee." (citations, alterations, and quotation marks omitted)).

Next Barnes contends that Loevy's rate should be reduced because much of his billed time was spent observing the trial and conferring with the other attorneys about strategy. It is true that the court must be on guard against time spent inflating the bill with unnecessary tasks. The court knows Jon Loevy to be an experienced trial lawyer, however, and the advice and consultation of a seasoned trial lawyer can be invaluable in a complicated civil rights case such as this one. The court finds that Loevy's contributions to Fox's representation adequately justify his hourly rate.

Finally, Barnes contends that Wang's hourly rate should be reduced because she was recently awarded only $285 per hour by Judge Pallmeyer. Dkt No. 382, *McDonough v. City of Chi.*, No. 06 C 2732 (N.D. Ill. Mar. 27, 2013). In *McDonough*, however, the only count that proceeded to trial resulted in a hung jury, followed by a settlement. *Id.* at 3. Here, the plaintiff obtained a much greater degree of success, and so the higher hourly attorney's fee is justified.

Barnes's other arguments are similarly without merit. The court finds that the requested hourly fees are appropriate to compensate Fox's lawyers for their outstanding representation and the excellent result they obtained for their client at this highly contested jury trial.

## CONCLUSION

For the reasons stated above, plaintiff Fox's bill of costs (Dkt. No. 451) and fee petition (Dkt. No. 534) are granted. Fox's attorneys are awarded $1,234,180 in attorney's fees and costs in

the amount of $195,518.66.

                                                ENTER:

                                                _____
                                                JAMES F. HOLDERMAN
                                                District Judge, United States District Court

Date: August 15, 2013