**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAY A. FOX, by and through his, Guardian, ROSE FOX, | ) ) ) | |
| Plaintiff, | ) ) | No. 09-cv-5453 |
| vs. | ) ) | Chief Judge James F. Holderman |
| DR. CONSTANTINE PETERS, et al, | ) ) ) | |
| Defendants. | ) | |

**WEXFORD HEALTH SOURCES, INC.'S MOTION TO REOPEN PURSUANT TO RULE 60(b)(6) TO SEAL (Dkt. 330) FROM THE COURT RECORD**

Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, moves this Court pursuant to Fed. R. Civ. P. 60(b)(6) to reopen the above-captioned case and seal Plaintiff's exhibits attached to Plaintiff's Response to the Court's Order Requesting Supplemental Materials on Final Policymaking Authority (Dkt. 330) From the Court Record, and states as follows:

### INTRODUCTION

Wexford Health Sources Inc. ("Wexford"), is a healthcare services company that provides correctional healthcare to patients in the custody and care of the Illinois Department of Corrections and other state agencies. (Attached as Exhibit "1" is the Affidavit of Joe Ebbitt, Director of Risk Management, HIPAA Compliance, and Legal Affairs for Wexford). Wexford competes with other correctional healthcare companies for business. (*Id*. at ¶ 4). Consequently, Wexford has significant concerns about public disclosure of Wexford's confidential commercial proprietary/trade secret information contained in certain documents that often are relevant during

1

litigation, including but not limited to Wexford Policies and Procedures and clinical protocols. (*Id*. at ¶ 5)

Wexford provides a variety of written Policies and Procedures that are utilized by healthcare providers employed by Wexford as reference guidelines in treating patients within the Illinois Department of Corrections and other state agencies. (*Id*. at ¶ 6). Wexford's Policies and Procedures serve as a reference tool for physicians to assist them in caring for patients within the Illinois Department of Corrections. (*Id*. at ¶ 7). Wexford's Policies and Procedures were developed and issued by the Medical Advisory committee of Wexford. (*Id*. at ¶ 8). Wexford's Medical Advisory committee is composed of clinicians who utilize the most recent professional standards, evidence-based studies, and accepted practices. (*Id*. at ¶ 9). Wexford's Policies and Procedures are not intended to replace healthcare provider's clinical judgment, nor do they strictly apply to all patients. Application of any Policy and Procedure is a decision made by the physician after taking the individual patient's clinical presentation into consideration. (*Id*. at ¶ 10).

As explained in detail below, the sole purpose of Wexford's motion is to reopen this lawsuit to seal Plaintiff's exhibits attached to Plaintiff's Response to the Court's Order Requesting Supplemental Materials on Final Policymaking Authority (Dkt. 330) in order to protect Plaintiff's trade secrets from its competitors and remove the potential of incarcerated future litigants from attaching Wexford's documents to their *pro se* complaints without utilizing the discovery process.

## **PROCEDURAL BACKGROUND**

Ray A. Fox, by and through his Guardian, Rose Fox (collectively, "Fox"), initiated this lawsuits (the "Fox case"), against Wexford and other defendants in September 2009. (Dkt. 1). Wexford was represented by Michael Charysh and Richard Tjepkema of the law firm Charysh & Schroeder, Ltd. (hereinafter "Wexford's Counsel"), and Fox was represented by the law firm of

Loevy & Loevy. During the allegations of the Fox case, Wexford was an insured under several Liability Insurance Policies issued by Admiral Insurance Company ("Admiral") from October 1, 2000 through October 1, 2008. The 2006-2007 Admiral policy is numbered E0000000615-10, with effective dates of October 1, 2006 to October 1, 2007. The 2007-08 Admiral policy is numbered E0000000615-11, with effective dates of October 1, 2007 to October 1, 2008. (*Id*. at ¶ 13). Admiral retained Michael Charysh and Richard Tjepkema of Charysh & Schroeder Ltd. to defend Wexford, as well as defendants Dr. Peters and Nurse Becker, both of whom also were insureds under the Admiral Policies. (*Id*. at ¶ 14). Through Charysh and Tjepkema and other attorneys retained by Admiral, Admiral controlled every aspect of Wexford's, Becker's, and Peters' defense and settlement negotiations. (*Id*. at ¶ 15).

On June 14, 2010, Joe Ebbitt, Wexford's Director of Risk Management, HIPAA Compliance, and Legal Affairs for sent e-mail correspondence to Wexford's Counsel to assist in the preparation of Wexford's responses to Plaintiff's second set of interrogatories and request for production to Wexford. (*Id*. at ¶ 15). In the same correspondence to Richard Tjepkema, Wexford's Counsel, Mr. Ebbitt expressly stated that a confidential protective Order must be entered prior to release of any Wexford's Policies and Procedures. (*Id*. at ¶ 16). Both Michael Charysh and Richard Tjepkema of Charysh & Schroeder Ltd. had previously represented Wexford in numerous other lawsuits prior to the Fox case. (*Id*. at ¶ 17). Michael Charysh and Richard Tjepkema of Charysh & Schroeder Ltd. were on notice for years of Wexford's legitimate and significant concerns about public disclosure of Wexford's confidential commercial proprietary/trade secret information contained in certain documents that often are relevant during litigation, including but not limited to Wexford policies, procedures, and clinical protocols. (*Id*. at ¶ 18).

On January 18, 2012, the Court entered the following Order (Dkt. 325) "[f]ollowing the direction provided by the U.S. Supreme Court regarding governmental bodies, the court, rather than the jury, will make the legal determination of who the policy-maker for Wexford Health Sources, Inc. was during the period relevant to this case. *Cf. Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("[T]he identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury."). The Court ordered the following, "[t]o assist the court in making the correct legal determination, the parties are to submit by 12:00 pm on January 19, 2012, the following:

> 1. Any other published authority relevant to the question of who the policy-maker for Wexford Health Sources, Inc. is.
>
> 2. The contract between IDOC and Wexford, with the relevant provisions specifically identified, tabbed, and highlighted.
>
> 3. The contract between Wexford and Dr. Constantine Peters, with the relevant provisions specifically identified, tabbed, and highlighted.
>
> 4. The contract between Wexford and any other employee who the parties believe may have policy-making authority for Wexford, with the relevant provisions specifically identified, tabbed, and highlighted.
>
> 5. Any other material the parties believe is relevant to the determination, specifically identified, tabbed, and highlighted.

Plaintiff's Counsel filed a Response to the Court's Order for Supplemental Materials on Final Policymaking Authority of employees associated with Wexford (Dkt. 330). Plaintiff's response attached the following exhibits.

- Exhibit A (Contract between Wexford and IDOC, Dkt. #330-1 attached). Please note this contract is titled, "State of Illinois Renewal #1 Contract for Supplies and/or Services" between WHS and the Illinois Department of healthcare and Family Services (HFS), the Illinois Department of Corrections (IDOC), the Illinois Department of Juvenile Justice (IDJJ) and Wexford beginning on December 17, 2005 and ending on December 16, 2017. **This is an un-redacted copy of the contract that includes very specific data concerning vendors at the time of the contract, pricing and clearly is**

**a confidential WHS trade secret that should never have been disclosed**. **It was not delineated confidential.**

- Exhibit B (Mariann Forkgen Deposition). Through this rule 30(b)(6) witness, Wexford explained that, as a general matter, the policies that govern Wexford's medical operations at Stateville NRC are those policies that the Medical Director signs.

- Exhibit C (Wexford Prison Operations Policies and Procedures for 2006 and 2007, Dkt. 330-4 attached).

- Exhibit D (Mary Purvin Deposition). Mary Purvin, Wexford's Rule 30(b)(6) witness on policies and procedures at Stateville.

- Exhibit E (Deposition of Regional Medical Director Arthur Funk) who testified that there was no Keep on Person policy adopted for Stateville.

Despite being expressly notified and being on notice of Wexford's interests of non-disclosure through previous representation, and representation in the Fox case, both Michael Charysh and Richard Tjepkema of Charysh & Schroeder Ltd. failed to obtain any relief to protect Wexford's legitimate and significant concerns about public disclosure of Wexford's confidential commercial proprietary/trade secret information, specifically Wexford's Prison Operations Policies and Procedures Manual for Illinois. (*Id*. at ¶ 22). Wexford's Counsel failed to file any motion or notify the Court in any manner whatsoever of their client, Wexford's legitimate and significant interest in non-disclosing Wexford's confidential commercial proprietary/trade secret information, specifically Wexford's Prison Operations Policies and Procedures Manual for Illinois. (*Id*. at ¶ 23).

Wexford's Counsel did not seek the entry of any protective order despite Wexford's express instructions to their counsel that a confidential protective order must be filed prior to disclosure of Wexford's Prison Operations Policies and Procedures. (*Id*. at ¶ 24). Wexford's Counsel did not informally request from Plaintiff's counsel that Wexford's Prison Operations Policies and Procedures not be filed in the public record despite my express instructions to Mr. Tjepkema that a confidential protective order must be filed prior to disclosures of Wexford's Prison Operations Policies and Procedures. (*Id*. at ¶ 25).

At no point in time, was Wexford notified by Michael Charysh, Richard Tjepkema or their law firm, Charysh & Schroeder Ltd., that any of Wexford's Prison Operations Policies and Procedures would be filed without a confidential protective order in place to protect Wexford's legitimate and significant interest in its confidential commercial proprietary/trade secret information. (*Id*. at ¶ 26). At no point in time, did Wexford ever impliedly consent to Michael Charysh, Richard Tjepkema or their law firm, Charysh & Schroeder Ltd., to provide any of Wexford's Prison Operations Policies and Procedures to opposing counsel, co-defendant's counsel or any third-party without a confidential protective order in place. (*Id*. at ¶ 27). It is unclear why Wexford's Counsel would agree disclose any of Wexford's policies and procedures without Wexford's approval or a protective order per Wexford's instructions.

On October 25, 2012, Wexford entered into stipulation and agreement with Fox and the Court entered a Consent Judgment. (Dkt. 396).[1] After Wexford settled, on January 18, 2013, a jury returned a verdict in favor of plaintiff Ray A. Fox on his Eighth Amendment claim under 42 U.S.C. § 1983 that IDOC defendant, David Barnes for $11 million in compensatory damages and $1 million in punitive damages. (Dkt. 446).

**WEXFORD' POLICIES & PROCEDURES IN M.C. HARRIS V. WEXFORD HEALTH SOURCES**

Wexford first became aware on January 25, 2017, that Michael Charysh, Richard Tjepkema or their law firm, Charysh & Schroeder Ltd. provided to Plaintiff's counsel in the Fox case Wexford's Prison Operations Policies and Procedures when another lawsuit was filed in the U.S. District Court for the Northern District of Illinois against Wexford in *M.C. Harris v. Wexford Health Services et al*, case no. 16-cv-09077 (the "Harris case"). All of the exhibits, referenced

---

[1] Fox then sought to enforce the $14 million consent judgment against Admiral and brought claims for breach of contract (indemnification), bad faith failure to settle, vexatious and unreasonable conduct under 215 ILCS 5/155, and fraudulent inducement to settle. *See Ray A. Fox, by and through his Guardian, Rose Fox v. Admiral Insurance Co.,* case no. 15-cv-08740.

6

above, in the Fox Case are currently easily accessible to anyone, including Wexford's competitors, by simply viewing the documents on the electronic filing system. Plaintiff's initial *pro se* complaint in the Harris Case attaches portions of Wexford's Prison Operations Policies and Procedures as exhibits. Specifically, pages 31 through 46 of Plaintiff's Complaint (Document # 1) in the Harris case attach Wexford's Prison Operations Policies and Procedures. (*Id*. at ¶ 29). Plaintiff's Complaint in the Harris case contains at the top portion of pages 36 through 46 the following "Case: 1:09-cv-05453 Document #: 330-4 Filed: 01/19/12." (*Id*. at ¶ 30). Plaintiff's Complaint in the Harris case utilizes Wexford's Prison Operations Policies and Procedures disclosed in the Fox Case. (*Id*. at ¶ 31). Wexford's Prison Operations Policies and Procedures disclosed in the Fox case are part of the Court record in the Fox case and are currently available to anyone who is willing to access these public documents. (*Id*. at ¶ 32).

## STANDARD

In determining whether to unseal documents other than a complaint, a court weighs the need for the material against the harm risked by disclosure. *United States ex rel. Yannacopolous v. Gen. Dynamics*, 457 F. Supp. 2d 854, 858 (N.D. Ill. 2006) (citing 31 U.S.C. § 3730(b)(3); citing *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994)). Furthermore, in applying this balancing test, courts are mindful of the Seventh Circuit's admonition that "[c]oncealing judicial records 'disserves the values protected by the free-speech and free-press clauses of the First Amendment and prevents the public from monitoring judicial performance adequately.'" *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002). Pursuant to Fed. R. Civ. Pro.

## ARGUMENT

Based on Wexford's counsel's failure to protect Wexford's interest in obtaining a protective order prior to disclosure of Wexford's Prison Operations Policies and Procedures, other

individuals now have in their possession a copy of Wexford's confidential commercial proprietary/trade secret information. Without the proper protections requested by Wexford in the Fox case, and Michael Charysh, Richard Tjepkema or their law firm, Charysh & Schroeder Ltd.'s failure to protect Wexford's interest in obtaining a protective order prior to disclosure of Wexford's Prison Operations Policies and Procedures, other correctional healthcare companies may now access and utilize Wexford's confidential commercial proprietary/trade secret information to potentially gain a competitive business advantage against Wexford.

In addition, without the proper protections requested by Wexford in the Fox case, and Michael Charysh, Richard Tjepkema or their law firm, Charysh & Schroeder Ltd.'s failure to protect Wexford's interest in obtaining a protective order prior to disclosure of Wexford's Prison Operations Policies and Procedures, like Mr. Harris, other potential pro se litigants, or represented litigants may now access and utilize Wexford's confidential commercial proprietary/trade secret information in future litigation prior to Wexford having any opportunity to obtain Court relief to protect their commercial proprietary/trade secret information. Sealing the dockets would not effect the outcome in the case and no other party would be prejudiced if any of the exhibits attached to Plaintiff's Counsel Response to the Court's Order for Supplemental Materials on Final Policymaking Authority of employees associated with Wexford are sealed by this Court.

## CONCLUSION

WHEREFORE, WEXFORD HEALTH SOURCES, INC., respectfully requests this Honorable Court grant its motion for the above-reasons and re-open this lawsuit pursuant to Fed. R. Civ. P. 60(b)(6) in order to seal Plaintiff's exhibits attached to Plaintiff's Response to the Court's Order Requesting Supplemental Materials on Final Policymaking Authority (Dkt. 330).

          Respectfully submitted,

          By:   /s/ Robert S. Tengesdal
              *One of the attorneys for Wexford Health Sources, Inc.*

Robert S. Tengesdal (#6288650)
Harrison A. Cohen (#6317776)
BOLLINGER CONNOLLY KRAUSE, LLC
500 West Madison Street
Suite #2430
Chicago, IL 60661
Ph: (312) 253-6200

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2017, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF. All of the participants in the case are registered CM/EFC users and will be served by the CM/EFC system.

By: /s/ Robert S. Tengsedal